# CASES

## ARGUED AND DETERMINED

### IN THE

# Supreme Court of South Dakota

## STATE v. HEFFERNAN et al.

Code Cr. Proc. § 7, giving defendant in a criminal prosecution the right to be confronted with the witnesses against him "in the presence of the court," adds nothing to Const. art. 6, § 7, giving him the right to "meet the witnesses against him face to face," or Const. U. S. Amend. art. 6, giving him the right to be "confronted with the witnesses against him," which are satisfied by his having had an opportunity to cross-examine the witnesses, so as to allow, under an exception to the hearsay rule, admission against him, at the trial on the indictment, of testimony given on the preliminary examination by a witness who has since left the state; and this, though the complaint before the committing magistrate alleged the offense as committed on a day different from that alleged in the indictment, the precise time being immaterial, and it being clearly shown that the offense under consideration on the two hearings was the same.

Haney, P. J., dissenting.

(Opinion filed, Oct. 11, 1909.)

On rehearing. Judgment affirmed. For former report, see 22 S. D. 513, 118 N. W. 1027. Hon. CHARLES S. WHITING, Judge.

McCOY, J. The former opinion in this case, reversing the judgment of the trial court, is reported in 22 S. D. 513, 118 N. W. 1027. Petition for rehearing having been granted the cause is again before this court for all purposes upon reargument of the entire record. There is but one debatable question in the record. The defendants were convicted of the crime of adultery. On the trial in the circuit court certain witnesses, children of the defendant Taylor, were absent from this state and beyond the jurisdiction of the trial court, having but a short

time prior to the trial having left the state of South Dakota and gone to the state of Iowa. These witnesses testified on behalf of the state on the preliminary examination held before the county judge of Kingsbury county, acting as committing magistrate in the presence of defendants, and were cross-examined by defendants' counsel, and the testimony thus given was taken in shorthand by a stenographer. On the trial in the circuit court, after showing the absence of these witnesses from the jurisdiction of the court, the state called Mr. Scott, the stenographer who took the testimony on the preliminary hearing, as a witness, and by him using his transcript of the evidence of said witnesses to refresh his memory, gave the testimony of each of said absent witnesses before the jury. The defendants made proper objections to the offer and admission of this testimony, which objections were overruled, and proper exceptions taken thereto. Defendants now, as on the former hearing, urge that the admission of such evidence was reversible error.

It is contended on the part of defendants that the admission of this testimony was in violation of section 7, Code Cr. Proc., which, among other things, provides that: "In a criminal action defendant is entitled to be confronted with witnesses against him in the presence of the court." It is evident the learned trial court overruled the objections to the testimony in question on the theory that it was admissable under a well-known exception to the "hearsay rule." The reason for excluding hearsay evidence is that it was not given under the sanction of an oath, and that there was no opportunity for cross-examination. It has long been a settled rule of evidence, as one of the exceptions to the general rule excluding hearsay, that the testimony of a witness given in a former action, or at a former stage of the same action, is competent in a subsequent action, or in a subsequent proceeding of the same action, where it is shown that such witness is dead, has become insane or disqualified, is beyond the jurisdiction of the court (that is, out of the state), cannot conveniently be found, or has been kept away by the opposite party, where it is also shown that the former giving of such testimony was under oath, and that opposing party cross-examined or was afforded an opportunity to cross-examine such

witness. This rule has been generally applied in criminal causes, and has been held not to be in conflict with article 6 of the United States Constitution amendments, providing that "in all criminal prosecutions the accused shall enjoy the right to be confronted with witnesses against him," nor in conflict with the state Constitution, such as ours, (article 6 § 7), which provides that "in all criminal prosecutions the accused shall have the right to meet the witnesses against him face to face;" it being held that, where the defendant has once at some proper stage of the proceeding been confronted with and met such witness face to face, has cross-examined him, or been given the privilege to do so, the provisions of these Constitutions have been satisfied, and that such evidence is not objectionable on that account. Elliott, Ev. § 503; Jones, Ev. § 339; Wigmore, Ev. §§ 1365-1395; 12 Cyc. 543; 16 Cyc. 1091; Mattox v. United States, 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409; Bish, Crim. Pro. 1194; State v. Mannion, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638. This rule seems to have come into existence of necessity by reason of the fact that to hold otherwise would often result in a failure or miscarriage of justice. The defendant in the case at bar contends that because the legislators of this state who framed this section 7, Code Cr. Proc., added thereto the clause "in the presence of the court," it confers upon a defendant in a criminal action some greater or broader or additional right than is conferred by the provisions of the state and federal Constitutions, and that the adding of this clause, "in the presence of the court," has the effect to limit the former testimony that may be given under the above-mentioned exception to the "hearsay rule" to only such testimony as might be given "in the presence of the court wherein the action is being tried;" or, in other words, that the confrontation mentioned in this section of the Code can only take place in the presence of the court wherein the action is being tried. Upon further and more careful consideration, we are of the opinion that this position is unsound and untenable, and not sustained by authority.

Formerly, according to the history of these provisions of the state and federal Constitutions and like statutes, defendants in criminal actions were prosecuted and convicted upon ex parte

depositions and affidavits, taken in the absence of the defendant and his counsel, and to remedy this evil such constitutional provisions and statutes were brought into existence, the intended effect of which was to secure to the defendant the right or privilege of cross-examination of the witnesses against him, that he might propound or have propounded to such witnesses personally questions which they were required to answer on oath in his presence. It seems to be held everywhere and by all courts of last resort that "to be confronted with the witnesses against him" and to "meet the witness face to face" mean one and the same thing; that is, the accused shall have the right or privilege to cross-examine the witnesses against him. To confront a witness means that you shall have the right or privilege or opportunity to meet such witness personally face to face for the purpose of cross-examination. Elliott, Ev. 503; Wigmore, Ev. 1365-1395; 12 Cyc. 543; Mattox v. U. S., 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409; Bishop, Crim. Pro. 1194, 1197, 1294; State v. Mannion, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638, 75 Am. St. Rep. 753. It would be an absurdity, and statement of a physical impossibility, to say that the "confrontation" or meeting a witness "face to face" which resulted in cross-examination in the presence of the defendant could take place without the witness being personally present at the place of the "confrontation" or place of such meeting "face to face." It is plainly apparent that the framers of the state and federal Constitutions contemplated and had in mind and impliedly intended that this "confrontation" and "meeting face to face" should take place somewhere. It is also plainly apparent that they did not intend that such confrontation and meeting face to face should take place out on the railroad track or in some dimly lighted back alley, but it is evident they intended it should take place in the presence of the court or tribunal where the cross-examination or opportunity to cross-examine might properly and lawfully take place. Elliott, Ev. §§ 503-507; Wigmore, Ev. 1373, 1375, 1395. In general, the principle is clearly accepted that testimony taken before any tribunal employing cross-examination as a part of its procedure is admissible. Wigmore, Ev. 1373.

These constitutional provisions mean that the "confrontation" or "meeting face to face" must take place in the presence of the court having jurisdiction to permit the privilege of cross-examination. They could by no possibility mean otherwise. Hense there was nothing added to the legal effect of section 7, Code Cr. Proc., by the incorporation therein of the clause "in the presence of the court," as used in this section of the statute. This clause does not specify any particular court. It does not specifically point out the court "wherein the action is being tried" as the one and only court before which such confrontation can be made any more than it specifies the justice court, or county court, before which the preliminary hearing may be held. But considering this section of the statute in the light of the purpose sought to be obtained, and in the light of the reasons which brought it about, viz., to remedy the evil of ex parte depositions and affidavits by securing to the defendant the right to cross-examine the witness against him, it is plainly apparent that the legislative mind by the use of the clause "in the presense of the court" had in view the court wherein this right or privilege of cross-examination might be legally exercised, whether it was justice court, county court, or circuit court; the object being to shut out all possibility of the use of ex parte depositions not taken in the presence of the accused. It was simply re-enactment of the constitutional right then already existing. This is, in effect, the view taken by the United States Supreme Court in Mattox v. United States, supra: "The primary object of the constitutional provision in question was to prevent ex parte depositions and affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity not only of testing the recollection and of sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of these safe-guards even by the death of the witness, and that, if notes of his testi-

mony are permitted to be read, he is deprived of that personal presence of the witness before the jury which the law has designed for his protection.  But general rules of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case.  To say that a criminal, after having once been convicted by the testimony of a witness, should go scot-free simply because death has closed the mouth of that witness, would be carrying the constitutional protection to an unwarrantable extent.  The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused.  We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guarantees for the rights of the citizens, but as securing to every individual such as he already possessed as a British subject such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a bill of rights are subject to exceptions recognized long before the adoption of the · Constitution, and not interfering at all with its spirit.  Such exceptions were obviously intended to be respected.  A technical adherence to the letter of a constitutional provision may occasionally be carried farther than is necessary to the just protection of the accused, and farther than the safety of the public will warrant.  For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations.  They are rarely made in the presence of the accused.  They are made without any opportunity for examination or cross-examination, nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility.  They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice.  As was said by the Chief Justice, when this case was here upon the first writ of error (146 U .S. 140, 13 Sup. Ct. 50, 36

L. Ed. 917, the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict adherence to the truth as would the obligation of an oath. If such declarations are admitted, because made by a person then dead, under circumstances which give his statements the same weight under oath, there is equal if not greater reason for admitting testimony of his statements which were made under oath. The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of cross-examination. This, the law says, he shall under no circumstances be deprived of." It is quite clear from this exposition of the constitutional provision that "the accused shall have the right to be confronted with the witnesses against him" necessarily implies that the confrontation should take place in the presence of the court. Yet this case holds that this necessarily implied requirement of the Constitution might be dispensed with in cases of necessity, and aptly illustrates by use of another exception to the hearsay rule, viz., dying declarations.

This seems to be the view taken by the courts of last resort of other states having similar statutes. Section 8, Code Cr. Proc. N. Y., provides that the defendant shall be confronted with the witnesses against him in the presence of the court, except that when the charge has been preliminarily examined before a magistrate and reduced to writing in the presence of the defendant, who has had an opportunity to cross-examine the witness, it may be read in evidence on the trial, where it is shown that the witness is dead or insane, or could not be found in the state. In effect, the same as section 686, 5 Kerr's Cyc. Code Cal. In the recent case of People v. Elliott, 172 N. Y. 146, 64 N. E. 837, 60 L. R. A. 318, it is held that this section 8, Code Cr. Proc. N. Y., with this exception incorporated, and containing, "in the presence of the court," is merely re-enactment of section 14 of the New York Bill of Rights, which provides that "the accused shall be confronted with the witnesses against him," the exact language of article 6, Const. U. S. Amend, and the exact legal effect of article 6, § 7, Const. S. D. It is also held in this case that this

section 8 of the New York Code, containing this clause, "in the presence of the court," does not require that the accused shall in all cases be confronted with the witnesses against him upon a pending trial of the indictment (which is the exact point at issue in the case at bar), but that the statute is satisfied in cases of necessity if the accused has once been confronted with the witnesses against him in any stage of the proceeding upon the same accusation, and has had an opportunity of a cross-examination by himself or counsel in his behalf. The case of People v. Fish, 125 N. Y. 136, 26. N. E. 319, holds that neither this same section 8, Code Cr. Proc. N. Y., containing this clause, "in the presence of the court," nor section 14 of the New York Bill of Rights (1 Rev. St. pt. 1, c. 4), nor the federal Constitution, were ever intended to secure the accused the right to be confronted with the witnesses against him upon his final trial, but to protect him against ex parte affidavits and depositions taken in his absence. If section 8 of the New York Code with this clause, "in the presence of the court," and the exception annexed thereto, was merely re-enactment of section 14 of the New York Bill of Rights, then the reason is so much stronger why this section 7 of the Code of Criminal Procedure of this state with only the clause "in the presence of the court" therein was merely re-enactment of the constitutional right secured to an accused to be confronted with the witnesses against him, already then existing, and the said section of the Code therefore added nothing whatever by way of legal effect to the state Constitution.

Mr. Wigmore, in his valuable work on Evidence, reaches the same conclusion. He has gone into the history and purpose of this question so thoroughly and to such length that it is impracticable to fully quote the whole of his argument. Volume 2, §§ 1365-1418, inclusive. In the period when the hearsay rule is being established and ex parte depositions are still used against an accused person, we find him frequently protesting that the witnesses should be "brought face to face" or that he should be "confronted" with the witnesses against him. The final establishment of the hearsay rule meant that this protest was sanctioned as a just one; in other words, that confrontation was required. What was,

in principle, the meaning and purpose of this confrontation? So far as there is a rule of confrontation, what is the process that satisfies this rule? It is generally agreed that the process of confrontation has two purposes—the main and essential one, and a secondary one. The main and essential purpose of confrontation is to secure the opportunity of cross-examination. The opponent demands confrontation, not for the idle purpose of gazing upon a witness or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the direct and personal putting of questions and obtaining immediate answers. That this is the true and essential significance of confrontation is demonstrated by counsel and judges from the beginning of the hearsay rule to the present day. There is, however, a secondary advantage to be obtained from the personal appearance of the witness. The judge and jury are enabled to obtain the elusive and incommunicable evidence of a witness' deportment while testifying, and a certain subjective moral effect is produced upon the witness. This secondary advantage, however, does not arise from the confrontation of the opponent and the witness. It is not the consequence of those two being brought face to face. It is the witness' presence before the tribunal that secures this secondary advantage, which might equally be obtained whether the opponent was or was not allowed to cross-examine. In other words, this secondary advantage is a result accidently associated with the process of confrontation, whose original and fundamental object is the opponent's cross-examination. The witness' presence before the tribunal may be dispensed with if not obtainable. The question, then, whether there is a right to be confronted with opposing witnesses, is essentially a question where there is a right of cross-examination, if there has been a cross-examination there has been a confrontation. The satisfaction of the right of cross-examination disposes of any objection based on the so-called right of confrontation. Nevertheless, the secondary advantage incidentally obtained for the tribunal by the witness' presence before it—the demeanor-evidence—is an advantage to be insisted upon whenever it can be had. No one has doubted that it is highly desirable if

only it is available. But it is merely desirable. Where it cannot be obtained, it need not be required. It is no essential part of the motion of confrontation. It stands on no better footing than other evidence to which special value is attached, and just as the original of a document, or a preferred witness may be dispensed with in case of unavailability, so demeanor-evidence may be dispensed with in a similar necessity. Accordingly, supposing that the indispensable requirement of cross-examination has been satisfied, the only remaining inquiry is whether the demeanor-evidence, to be obtained by the witness' production before the tribunal, is available.

This inquiry, the conditions of unavailability of demeanor-evidence by reason of death, illness, and the like, remains now to be made. But first the effect must be considered of the constitutional sanction in the United States of the principle of confrontation; for this has often erroneously affected the judicial attitude towards demeanor-evidence. In the United States most of the Constitutions have given a permanent sanction to the principle of confrontation by provisions requiring that in criminal cases the accused shall "be confronted with the witnesses against him" or "brought face to face" with them. The question thus arises whether these constitutional provisions affect the common-law requirement of confrontation otherwise than by putting it beyond the possibility of abolition by an ordinary legislative body. The only opening for argument lies in the circumstance that these brief provisions are unconditional and absolute in form; i. e., they do not say that the accused shall be "confronted" except when the witness is deceased, ill, out of the jurisdiction, or otherwise unavailable, but imperatively prescribe that he "shall be confronted." Upon this feature the argument has many times been founded that, although the accused has had the fullest benefit of cross-examining a witness now deceased or otherwise unavailable, nevertheless, the witness' presence before the tribunal being constitutionally indispensable, his decease or the like is no excuse for dispensing with his presence. That this argument is unfounded is doubtless; and the answer to it may be put in several forms: (1) There never was at common law any recognized right

to an indispensable thing called confrontation as distinguished from cross-examination. There was a right to cross-examine as indispensable, and that right was involved in and secured by confrontation. It was the same right under different names. This much is clear enough from the history of the hearsay rule, and from the continuous understanding and exposition of the idea of confrontation. It follows that, if the accused has had the right of cross-examination, he has had the very privilege secured to him by the Constitution. (2) Moreover, this right of cross-examination thus secured was not a right devoid of exceptions. The right to subject opposing testimony to cross-examination is the right to have the hearsay rule enforced, for the hearsay rule is the rule requiring cross-examination. Now, the hearsay rule is not a rule without exceptions. There never was a time when it was without exceptions. There were a number of well-established ones at the time of the earliest Constitutions, and others might be expected to develop in the future. The rule had always involved the idea of exceptions, and the Constitution makers indorsed the general principle merely as such. They did not care to enumerate exceptions. They merely named and described the principle sufficiently to indicate what was intended. The rule sanctioned by the Constitution is the hearsay rule as to cross-examination, with all the exceptions that may legitimately be found, developed, or created therein. (3) The net result then, under the constitutional rule, is that, so far as testimony is required under the hearsay rule to be taken infra judicially (that is, within the presence of the court), it shall be taken in a certain way, namely, subject to cross-examination, not secretly or ex parte away from the accused. 2 Wigmore, Evidence, §§ 1365, 1395, 1396, 1397. For decisions sustaining the view that these provisions of the Constitutions were passed in view of the hearsay rule; and in view of the exceptions thereto, and did not have the effect of destroying such exceptions, see Jackson v. State, 81 Wis. 127, 51 N. W. 89; Summons v. State, 5 Ohio St. 341; State v. McO'Blenis, 24 Mo. 416, 435; Mattox v. U. S., supra; State v. Mannion, 19 Utah, 505, 57 Pac. 542, 45 L. R. A. 638.

It seems to be an elementary proposition that things necessarily or plainly implied in a Constitution or a statute are as substantial a part of the enactment thereof as those actually expressed. Riggs v. Palmer, 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, and exhaustive note 1 L. R. A. Cas. 613; Thurber v. Miller, 32 U. S. App. 209, 67 Fed. 371, 14 C. C. A. 432. If the "confrontation" or meeting "face to face" contemplated in the federal and state Constitutions must take place "in the presence of the court" by plain implication, then it logically follows that section 7, Code Cr. Proc., by containing the clause "in presence of the court," in express terms added nothing to the legal effect of the constitutional provision, and which should receive the same application. If the personal presence of the witness before the trial court, where cross-examination might be made, could be dispensed with in satisfying the provisions of a Constitution, which is the highest and most sacred law of the land, the same requirement contained in an ordinary statute could certainly be dispensed with when the proper necessity arose. And, again, the statute in question is general, and contains no exceptions, any more than does the federal or state Constitutions, and, if it is to receive a literal construction without exception, then it logically and necessarily follows that dying declarations and the former testimony of deceased witnesses must hereafter be rejected in this state, as those exceptions are in the same category and stand upon the same basis as the former testimony of a witness who is beyond the seas or out of the jurisdiction of the court, but if it was the intention that this section of our statute was passed in view of the hearsay rule, with all the exceptions thereto, which we are constrained to believe, then all the recognized exceptions to that rule are available just the same as under the provisions of the federal and state Constitutions.

The former testimony given before any tribunal which can enforce the attendance of witnesses, and administer oaths, and employs cross-examination as a part of its procedure, is admissible. Jones, Ev. 342; Wigmore, 1373. It seems to be generally held that the confrontation and meeting face to face is sufficient and satisfies the Constitutions where the cross-examination or oppor-

tunity to cross-examine was before a committing magistrate. Wigmore, Ev. 1375; Elliott, Ev. 507; Bishop, Crim. Pro. 1197; Cooley, Const. Lim. 389; Jones, Ev. 342. "Authority in favor of the admissibility of such testimony where the defendant was present, either at the examination of the deceased witness before a committing magistrate, or upon a former trial, is overwhelming." Mattox v. U. S., supra; Summons v. State, 5 Ohio St. 325; Brown v. Commonwealth, 73 Pa. 321, 13 Am. Rep. 740; State v. Houser, 26 Mo. 431; Commonwealth v. Richards, 18 Pick. (Mass.) 434, 29 Am. Rep. 608. That the testimony given at any former stage of the same action on the same accusation is admissible. People v. Elliott, supra; Jones, Ev. 339. Preliminary examination on the same accusation is an indispensable stage of every criminal action under the law of this state. Section 211, Code Cr. Proc. The former testimony of a witness who is absent from the state—that is, beyond the jurisdiction of the court—is one of the well-recognized necessities within the exceptions of the hearsay rule. A party desiring to offer the testimony of a witness who is out of the jurisdiction and beyond the reach of a subpoena or other compulsory process of the trial court is helpless. This branch of the rule stands upon the same reasoning and basis as the former testimony of a deceased witness. Wigmore, Ev. 1404; Jones, Ev. 345; 1 Greenleaf, Ev. 163; 1 Elliott, Ev. 500.

Some objection was made to this evidence in question on the ground that the complaint before the committing magistrate alleged the offense to have been committed January 2, 1907, while the information on which defendants were convicted alleged the offense to have been committed June 2, 1907, but we are of the opinion that the precise time was immaterial in a charge of this character, and, besides, the record shows clearly that the offense in relation to which the said witnesses testified on the preliminary examination was the same identical offense of which defendants were convicted under the information. State v. Fordham, 13 N. D. 494, 101 N. W. 888; State v. Rozum, 8 N. D. 548, 80. N. W. 477.

Finding no error in the record, the judgment of the circuit court is affirmed.

HANEY, P. J., dissents. WHITING, J., took no part in this decision.