(93 South. 338)

## CROWDER v. STATE. (4 Div. 696.)*

(Court of Appeals of Alabama. April 4, 1922. Rehearing Dismissed June 30, 1922.)

1. Criminal law ⬅1141(2)—Rule as to burden of proof to show an impartial trial cannot be had not changed by statute.

Act Aug. 26, 1909 (Acts Sp. Sess. 1909, p. 212), amending Code 1907, § 7851, to require the court of appeals to review the refusal of a change of venue without any presumption in favor of the ruling below, does not change the rule that in reviewing the matter the burden is on defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected.

2. Criminal law ⬅134(4)—Evidence insufficient to show such prejudice as would prevent fair and impartial trial.

Evidence on a motion for change of venue in a prosecution for homicide held insufficient to show such prejudice against defendant in the county as would prevent a fair and impartial trial.

3. Homicide ⬅181—Evidence of wife's relations with another than deceased admissible on question whether killing was result of passion.

On trial of man for killing his wife's paramour, where it appeared that, after learning of his wife's adulterous relations with deceased, he began to arm himself, and that he was thereafter in the company of his wife and deceased, evidence that to his knowledge his wife was divorced from her former husband because of illicit relations with a negro, that when first informed thereof defendant said they both ought to be killed, and that he heard an affectionate letter from his wife to the negro read, was admissible on the question whether his passion was aroused by knowledge of his wife's adultery.

4. Homicide ⬅47—Killing wife's paramour under influence of passion dethroning reason is only manslaughter.

One killing another whom he detects in adultery with his wife is guilty only of manslaughter in the first degree if such a degree of passion as to dethrone his reason is thereby engendered, but he must act immediately under the influence of such passion.

5. Homicide ⬅338(5)—Admission of evidence harmless when defendant convicted of lowest degree possible.

Where one killing his wife's paramour did not act in self-defense, and was convicted of manslaughter in the first degree, the lowest degree of homicide possible under the law and the evidence he was not harmed by evidence of his wife's adulterous relations with a negro, and of his attitude on hearing thereof.

Appeal from Circuit Court, Pike County; A. B. Foster, Judge.

J. Wade Crowder was indicted for murder in the first degree, convicted of manslaughter in the first degree, and he appeals. Affirmed.

W. L. & R. S. Parks, of Troy, for appellant.

On rehearing, counsel insist that the application for change of venue should be granted, and that the trial court was in error in holding otherwise, and they cite 84 Ala. 410, 4 South. 521.

Harwell G. Davis, Atty. Gen., for the State.

Brief of counsel did not reach the Reporter.

MERRITT, J. The defendant was tried under an indictment which charged murder in the first degree, and was convicted of manslaughter in the first degree, the verdict of the jury fixing his punishment at imprisonment in the penitentiary for a term of five years.

Before entering upon the trial the defendant filed an application for a change of venue, alleging that he could not have a fair and impartial trial in Pike county, this being

the county in which the indictment was found. In support of this application the defendant introduced in evidence his affidavit, that of his attorney, and the affidavits of something like 170 persons all living and residing in different parts of the county. These affidavits, in substance, recited the holding of a preliminary trial of the defendant before three justices of the peace in Troy, Ala., some time in July, just prior to the trial in the circuit court in December following; that there was a large crowd in attendance upon said preliminary trial, and that the state introduced evidence tending to show that the defendant shot and killed Arthur Head while the said Arthur Head was leaving the bedroom of the defendant, just a moment or two after the defendant had seen the said Head have sexual intercourse with defendant's wife, and further introduced evidence at said trial that about nine years prior thereto the defendant's wife was divorced from her former husband on the ground of adultery with a negro man, and the details of the divorce suit gone into; that the crowd in attendance upon the trial became interested to the point of excitement, and that after the trial reports were circulated throughout the county that defendant's wife had been divorced from a former husband on account of living in adultery with a negro man, and that before defendant married his wife she gave birth to a negro child, and that defendant, who is a doctor, delivered her of said negro baby; that the defendant castrated this negro man, and poisoned his wife's father; that these reports were scattered over the county, and that sentiment was very high and bitter against the defendant, and that, according to the opinion of affiants, the defendant could not get a fair and impartial trial.

The state in its answer denied the allegations of the application that the defendant could not secure a fair trial in Pike county, and in denial of the contention of the defendant offered in evidence the affidavits of about 138 persons residing in different parts of the county, and also the affidavits of the circuit and county solicitors, the sheriff of the county, and one of the justices of the peace before whom the preliminary trial was had. These affidavits recited in substance that, while there had been some discussion as to the testimony adduced before the preliminary as to the relationship that had existed some years between the defendant's wife and a negro man, neither on this or any other account was there reason to believe that the defendant would have other than a fair and impartial trial; that, while there was a large crowd at the preliminary trial, it was held in an orderly and peaceable manner, and neither at that or any time since had there been any unusual excitement except that incident to a crime of this nature;

that the defendant was unattended at the trial except by the sheriff; that shortly after the killing the defendant was carried back to the scene of the crime by the sheriff in order that he might get testimony preparatory to his defense; that, shortly after the preliminary trial, when he was denied bail, he was allowed bail on habeas corpus hearing which he made, and since that time defendant had traveled over the country securing affidavits in support of his application for change of venue; that he had attended and mixed with the crowds attendant upon two terms of the circuit court at Troy, the defendant's home being at Linwood, and on none of these occasions had there been any intimation of or attempt to do the defendant any violence, and that the temper of mind of the public was not such as that the defendant could not get a fair and impartial trial.

[1] Under the provisions of an act entitled an act "to amend section 7851 of the Code of Alabama," approved August 26, 1909, it is made the duty of this court to review and revise, on appeal, the action of a trial court in refusing to grant an application for a change of venue "without any presumption in favor of the judgment or ruling of the lower court on said application." Acts Special Session 1909, p. 212. In thus reviewing the matter, however, the rule is not changed that the burden is upon the defendant to show to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected.

[2] We have not been furnished with a brief by counsel for appellee, but we take it, gathered from his oral argument of the case, and his affidavit in the record, that the moving reason why defendant could not and did not have a fair and impartial trial is on account of what is known as the race question; that is, not the question itself, but the fact that an illegal relationship existed between a white woman and a negro man, and the details thereof were given at the preliminary trial, and these were circulated generally over the country, and to the extent that, on account of such alleged relationship, the defendant could not secure such a trial as is guaranteed him under the Constitution and laws of this state.

As strong as racial prejudice may be, and conceding that, under circumstances like those narrated in this record, it would reach its most intense heat, it is significant in this case that, from the time when it is said defendant's wife was divorced on account of her relationship with a negro man, or during a period of nine years, there is nothing in the record to indicate an outburst of public passion until the deceased is killed, and this alleged unlawful relationship is reviewed. It can hardly be that the same public conscience that we are not told has become so enraged on this account as to de-

prive the defendant of a fair trial did not know of these divorce proceedings, and of the alleged birth of a negro baby, and all the details thereof from the time that they are said to have sprung into being, and it is almost incredible that, with knowledge, presumably, of all these things, the defendant should have been permitted to come and go among these people, and not even a hint of harm against him.

We have given the most careful consideration to the entire evidence submitted both for and against the application for a change of venue in this case, realizing that the legislative purpose in making the matter revisable here without the indulgence of any presumption in favor of the correctness of the ruling of the trial court was to go as far as humanly possible in seeing that, in a criminal case, a trial by jury means a trial composed of impartial and fair-minded men. We do not believe that the evidence adduced in favor of the application was or is sufficient to warrant either the lower or this court in granting such a change. We have not been aided to this conclusion by a consideration of the fact, as shown by the record that a jury presumably free from bias and prejudice was selected from a venire of 95 names to try the defendant, nor the further very remarkable fact that this jury convicted the defendant of the lowest degree of homicide for which it could convict him under the law and the evidence in this case, that of manslaughter in the first degree.

[3, 4] The state was allowed to offer evidence over the objection and exception of the defendant that he was his wife's second husband; that she and her first husband separated and were divorced; that defendant knew of the cause of the separation, and that the cause was the illicit relationship between his wife and a certain negro man; that this was told defendant before he married his wife and after she had separated from her former husband; that when informed of the relationship of his wife and the negro man defendant said they both ought to be killed; that the defendant read or heard read a letter from his wife to this negro, reading: "Darling, I long to run my fingers through that beautiful curly hair of yours." The correctness of this ruling, in our opinion, cannot be questioned. There was no attempt to prove self-defense in this case, and, while there was some little evidence tending to prove insanity, it was so slight as to fail of its own weight. The real defense—and, under the evidence, there could have been none other, was that, the defendant having detected Arthur Head in the act of adultery with his wife, this provocation was so great as to engender such a degree of passion that his reason was dethroned, and as a consequence he slew the deceased, and under the

law he could be convicted of none other than manslaughter in the first degree. This is the law (Hooks v. State, 99 Ala. 168, 13 South. 767; McNeill v. State, 102 Ala. 121, 15 South. 352, 48 Am. St. Rep. 17; 2 Bishop, Crim. Law, § 708; Thomas v. State, 150 Ala. 31, 43 South. 371); but even more than this is required before he can claim a reduction in the degree of homicide for taking the life of his wife's paramour. He must have acted immediately, under the influence of such a passion. With the jury in possession of the undisputed facts that on the morning of the day of the night when Arthur Head was killed Dr. Crowder received a note telling him of the adulterous relationship between Head and his wife, that he thereupon began to arm himself, and that at dinner and supper he was at his home with both Head and his wife, it was certainly proper for the state to go further and show a state of facts that had existed some time before, that were of the same character, only more horrible, than those that are said to have existed at the time he took the life of Arthur Head, as tending to show that he had known of such things before, that he had condoned them, not only by overlooking them, but by being a party thereto; and with all the facts before the jury, they could believe nothing save that his passion was not so aroused on the night of the killing.

[5] But, should it be conceded that there was error in permitting the evidence alluded to to be introduced, how has the defendant suffered thereby? There was, as has been said, nothing to indicate that the defendant acted in self-defense, and the defendant was convicted of the lowest degree of homicide possible under the law and the evidence in this case.

We find no error in the record, and the judgment appealed from is affirmed.

Affirmed.