STATE, Respondent v. WATTS, Appellant

(188 N.W.2d 913)

(File No. 10804. Opinion filed August 13, 1971)

Rehearing denied August 31, 1971.

**Gordon Mydland,** Atty. Gen., **Bill Srstka,** Asst. Atty. Gen., Pierre, for plaintiff-respondent.

**Wm. E. Anderson,** Belle Fourche, for defendant-appellant.

RENTTO, Presiding Judge.

The defendant, Christie M. Watts, shot and killed his stepson, Ira Edlin, on September 29, 1968. The decedent was then about 39 years of age and the defendant 64. He admits firing the fatal shot, but claims that he did so in self-defense.

The information on which he was prosecuted charged him with having committed the crime of murder, but the jury found him guilty of the included offense of manslaughter in the first degree. He was sentenced to serve 18 years in the state penitentiary. From such judgment he appeals claiming that the evidence was insufficient to justify the verdict and prejudice resulting from errors in the admission of evidence.

The defendant had been married to the decedent's mother for 22 years. There were no children of this marriage, but she had two by a previous marriage—the decedent and his younger sister. The defendant adopted her daughter, but not the decedent. Both he and the decedent were operators of restaurants in Belle Fourche, South Dakota. The decedent's establishment, known as the Fifth Avenue Cafe, was located in the business section of the city, while the one

operated by the defendant and his wife, known as Watts Cafe, was situated north of the business district adjacent to a main traveled highway. They lived in a trailer house parked behind the cafe. The killing occurred in a public parking area near this cafe and their trailer home.

The defendant was in his cafe at about 10 p.m. on September 28, 1968. At that time he told one of the city policemen, who stopped there in the course of patrolling, that he had that day ordered the decedent not to come to his cafe and remarked that he had a gun in his pickup which he would use if they did not take care of him. The officer understood by the term "they" he had reference to the people charged with enforcing the law. He directed that if the decedent came to the cafe that he not be served. On the same occasion he told one of his employees to call him or the policemen if the decedent came to his place of business. He appeared to be angry when these statements were made.

At about 1:30 a.m. on September 29th the defendant was in the parking area near his cafe. In a conversation with one of his friends, during which he appeared emotionally worked up, he informed this friend that he had ordered the decedent not to come on his cafe property again. As they were talking a light colored automobile resembling the decedent's car drove up. The defendant then left his friend and walked to the rear of the lot where the trailer house was parked. As the friend made his way to the front of the cafe he glanced back and saw the defendant carrying a gun.

The light colored car which they saw drive up was the decedent's. His girl friend was driving it accompanied by him. After it stopped the decedent got out of the passenger side and began walking to the rear of it. About that time the defendant appeared at the front of the car with a gun in his hand. He spoke to the decedent saying "I told you not to come up here" and called him an s. o. b. and said "I am going to kill you". After saying that he raised the gun to his shoulder and shot the decedent. He then went into his cafe. This is the state's version of what happened at that time.

In support of his claim of self-defense the defendant testified that when the decedent got out of the car he appeared to have an object in his hand and he got the impression that he was trying to locate him. It was then he went to his car and got the shotgun and returned. He then ordered the decedent to leave which order he ignored and instead made a quick lunging type movement to the front end of the car where the defendant was. Defendant then shot the decedent intending only to injure him. There was no showing the decedent was armed.

As background support for this defense there was testimony by several witnesses for the defendant that relations between him and the decedent for about two years before the killing were strained and acrimonious. There was a mutual feeling of ill will. Apparently during that time they had had fights and arguments and each had on occasion threatened to get rid of the other and had stated that he was desirous of doing just that. These threats and statements were known to each of the parties. There was also some evidence that during the summer before the killing the decedent had tried to run over the defendant with his car.

In urging his claim that the evidence was insufficient to support the verdict the defendant argues that the evidence shows the homicide was justifiable as a matter of self-defense. SDCL 22-16-35 provides:

> "Homicide is justifiable when committed by any person in the lawful defense of such person, or of his or her husband, wife, parent, child, master, mistress, or servant when there is reasonable ground to apprehend a design to commit a felony, or to do some great personal injury, and imminent danger of such design being accomplished."

The weakness in his position is that it is based on his version of the circumstances under which the killing took place. On this record the question of whether the killing was justifiable was an issue for the jury to resolve. In doing so it had to choose between the two contradictory versions presented by the evidence. Its resolution of that issue against the de-

642

fendant has substantial evidentiary support. Consequently its determination is binding on us. State v. Nelson, 80 S.D. 574, 129 N.W.2d 54. A verdict based on conflicting evidence cannot be disturbed on appeal.

■ The decedent's girl friend was permitted to testify that at approximately 11 p.m. on September 28th when she and the decedent were in a bar he was called to the telephone. After he took the call and returned to where they had been sitting, he told her that it was from the defendant and that "Christie told him if he came up to Watts' he was going to kill him." defendant's objection that it called for hearsay testimony was overruled. Apparently the decedent had been in the same bar an hour earlier when he got another telephone call. He told the manager of the bar that it was from Christie and that he threatened to shoot him if he came to the Watts Cafe that night. Defendant's objection that this was also hearsay was overruled and the manager was allowed to relate what the decedent reported to him. It is defendant's position that the admission of these conversations was error prejudicial to him.

The testimony objected to was clearly hearsay since its probative force depended on the credibility of some person other than the witness by whom it was sought to be produced. Johnson v. Chicago & North Western Railway Company, 72 S.D. 580, 38 N.W.2d 348. This witness was not subject to cross-examination. Apparently it was claimed at the trial that it was res gestae, but this contention is not seriously urged here by the state. Consequently, we do not feel that a discussion of that principle is warranted. See 22A C.J.S. Criminal Law § 662(1); 40 Am.Jur.2d, Homicide, § 332; Underhill's Criminal Evidence, Fifth Edition, Vol. 2, § 266. The state's position is that even if the admission of this evidence was erroneous, defendant was not prejudiced by it.

The thrust of its argument is that such evidence was introduced to prove premeditation and since the jury found defendant guilty of manslaughter in the first degree, a crime of which premeditation is not an element, it rejected such testimony. In other words, it is saying that the error was

cured by the verdict which did not find him guilty of murder of which premeditation is an essential element. Warren on Homicide, Permanent Edition, Vol. 4, § 378 at p. 609. We think this view overlooks the defendant's claim of self-defense which such evidence contradicts.

The rule seems to be that the admission of the described evidence may not, for this reason, be regarded as not being prejudicial since it impinges on and tends to refute the defendant's claim of self-defense. 41 C.J.S. Homicide § 425d. See also Keith v. State, 93 Tex.Cr.R. 585, 248 S.W. 384; Crowder v. State, 18 Ala.App. 632, 93 So. 338; Hughes v. State, 188 Miss. 554, 195 So. 311; People v. Cutler, 197 Mich. 6, 163 N.W. 493. While not specifically so holding, these cases indicate that the rule relied on by the state does not apply to evidence of this type when self-defense is an issue. The jury was free to consider such evidence on the issue of self-defense even though it felt the record did not warrant a finding of premeditation.

The Sixth Amendment to the Constitution of the United States provides that one accused in a criminal prosecution shall enjoy the right to be confronted with the witnesses against him. This right has been made obligatory on the states by the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923. The Constitution of South Dakota assures him the same right in different language. Art. VI, § 7. It is there described as the right "to meet the witnesses against him face to face". The statutory codification of this right employs the same language. SDCL 23-2-9. It is a basic right of defendants.

While the hearsay rule and the confrontation clause are designed to protect similar values it does not follow that the right to be confronted demands that no hearsay evidence can ever be introduced. Dutton v. Evans, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213. It has long been recognized that the hearsay rule is not a rule without exception. Wigmore on Evidence, Third Edition, § 1397. See also State v. Heffernan, 24 S.D. 1, 123 N.W. 87, 25 L.R.A., N.S., 868, 140 Am.St.Rep. 764. But as above indicated the state does not urge that the

challenged evidence was admissible by virtue of any exception to the rule nor do we feel that it was.

However, in view of the other evidence in the record especially that concerning the mutual feeling of ill will between the parties and their several threats and announced desires to get rid of the other, the error in admitting such evidence is harmless beyond a reasonable doubt. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284. Accordingly, his conviction and sentence are affirmed.

HANSON, BIEGELMEIER and WOLLMAN, JJ., concur.

WINANS, J., dissents.

WINANS, Judge (dissenting).

I respectfully dissent. The majority are clearly right when they hold the evidence of what the testifying witness claimed decedent said the defendant said to decedent over the telephone is hearsay. They are again right in holding the admission of this evidence was erroneous. Where I part company with their holding is that in my opinion it was prejudicial to the defendant's case of self-defense and that its receipt into evidence constitutes reversible error.

The other evidence referred to by the court's opinion "concerning the mutual feeling of ill will between the parties and their several threats and announced desire to get rid of the other" in my opinion, instead of curing the weight or adverse effect of the error only serves to make it more harmful. Certainly I am unable to accept the proposition that its admission is harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.3d 1065. SDCL 15-6-61.

Its very receipt in evidence was to show that the defendant did not act in self-defense. It could not be offered for any other purpose and under no theory of any recognized exception to the many exceptions of the hearsay rule. The Dutton v. Evans case, 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213, referred to in the court's opinion was also concerned with hearsay evidence. It produced multiple opinions, and only two members of the court used the harmless error rationale. However, the nub of the opinion as announced by Justice

Stewart is that the hearsay evidence adduced under the evidentiary rule of the State of Georgia did not violate the constitution. It had been admitted in evidence under a coconspirator exception to the hearsay rule long established under the Georgia statutory law. We have no such rule of exception involved in this case. See Love v. State, Alaska, 457 P.2d 622, at page 629 et seq., for harmless error opinion.