STATE of South Dakota, Plaintiff
and Appellee,

v.

Linda DAVIS, Defendant and Appellant.

No. 12792.

Supreme Court of South Dakota.

Argued Jan. 22, 1980.

Decided June 25, 1980.

Kevin F. Manson, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John E. Fitzgerald, Jr. of Nelson & Harding, Rapid City, for defendant and appellant; Jerry D. Johnson, Rapid City, on brief.

HENDERSON, Justice.

## ACTION

Defendant-appellant Linda Davis appeals from a judgment of conviction of aggravated assault and an order entered by the Circuit Court, Eighth Judicial Circuit, denying her motion for a new trial. We affirm.

## FACTS

Defendant Linda Davis was found guilty in a trial by jury of aggravated assault in violation of SDCL 22–18–1.1(2). The evidence established that on the evening of December 26, 1978, a confrontation developed between two men identified as Royce Harmon and Kenneth Miller and defendant and Dee Stetter as the parties were leaving the Old Back Bar in Belle Fourche, South Dakota. Defendant's husband, George Davis, interceded and the argument continued outside the bar. Shortly thereafter, a fracus ensued between Kenneth Miller and George Davis. The record reveals that during this time defendant removed a handgun from her purse, stepped back a few feet, aimed, and fired the gun at Royce Harmon who was lying on the ground. Harmon was struck in his right hip; the bullet entered

through the lower part of the rectum and lodged in the pelvic region. Expert testimony established that Harmon was shot from the back.

At trial, the State called nine witnesses who were either present and observed the events that evening or who were directly involved in the investigation. Over objection, the testimony of Twila Weischedel, an eyewitness who testified at the preliminary hearing, was read into the record at trial. Weischedel was unavailable; she had left the state a few days before trial and her actual whereabouts was unknown. During defendant's trial an in-camera proceeding was held to hear the State's motion for admission of Twila Weischedel's testimony into evidence under SDCL 19–16–30 on the grounds that she was then unavailable. Officer Gerry Orcutt and Deputy State's Attorney Jeff Bloomberg each took the stand and outlined for the court their unsuccessful efforts in serving a subpoena on Miss Weischedel. Officer Orcutt testified that he had been requested by the state's attorney's office on April 3, 1979, to serve a subpoena on Twila Weischedel for the April 10, 1979, trial. The trial had originally been scheduled to commence April 3, but due to a death in Judge Brandenburg's family, the trial was postponed on April 2, 1979. It was not until April 3, however, that the trial date was actually rescheduled. Mr. Bloomberg testified that he received a phone call from Miss Weischedel on the evening of April 2 inquiring about the postponement. At that time, the state's attorney's office had not been advised of any possible rescheduling date. Miss Weischedel informed Bloomberg that she had made plans to go to Arizona through Colorado and Nevada and that she expressed disappointment over the possibility that her plans would be interrupted. Bloomberg testified that at such time he informed her that the State would pay her expenses back to South Dakota if she was out of the state at the time trial commenced. Bloomberg requested her to call him back the following day regarding the rescheduling date and payment of her expenses. She stated that she would call back; however, Bloomberg

neither heard from her nor saw her prior to the commencement of trial.

Officer Orcutt testified that he attempted to serve Miss Weischedel at the Old Back Bar, her place of employment, on April 3, 1979, and was told by a fellow employee that she had left for Arizona. Officer Orcutt made inquiry to another employee concerning Miss Weischedel's whereabouts. Mrs. Weischedel, Twila's mother, called Officer Orcutt that evening and informed him that Twila had left for Ft. Collins, Colorado, with a Paul Rodriguez. On April 10, 1979, the day of trial, Officer Orcutt contacted Mrs. Rodriguez to ascertain Twila's whereabouts. According to Mrs. Rodriguez, as far as she knew they were in Nevada. Deputy State's Attorney Bloomberg also spoke with Mrs. Rodriguez two or three days after learning that Deputy Orcutt could not locate Miss Weischedel. Bloomberg testified that Mrs. Rodriguez informed him that both her son and Weischedel were on their way to Colorado Springs and that they would be calling her when they arrived. Bloomberg requested Mrs. Rodriguez to contact him or the state's attorney's office the moment she heard from them. The state's attorney's office, however, never received word from Mrs. Rodriguez nor of Twila Weischedel's actual whereabouts.

As a result of the State's evidence that was offered to prove Twila Weischedel's unavailability and because of defendant's opportunity to cross-examine Twila at the preliminary hearing, the trial court admitted Miss Weischedel's preliminary hearing testimony into evidence. Defendant contends that admitting this preliminary hearing testimony into evidence at trial violated her federal and state rights of confrontation.

## ISSUE

Did the trial court err in admitting the preliminary hearing transcript testimony of an unavailable witness in violation of defendant's Sixth and Fourteenth Amendment right and concomitant right under Art. VI, § 7 of the State Constitu-

tion to be confronted with the witnesses against her at trial?

## DECISION

The Sixth Amendment right of an accused in a criminal prosecution to confront the witnesses against him has been made obligatory on the states through the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 933 (1965). Art. VI, § 7 of the South Dakota Constitution assures an accused the same right "to meet the witnesses against him face to face." The protections embodied in the Sixth Amendment and Art. VI, § 7, however, are not absolute. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Barber v. Page*, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas*, supra; *Mattox v. United States*, 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895); *State v. Watts*, 85 S.D. 638, 188 N.W.2d 913 (1971); *State v. Heffernan*, 24 S.D. 1, 123 N.W. 87 (1909). As the Court in *Barber v. Page*, supra, noted, "[t]here has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous judicial proceedings against the same defendant which was subject to cross-examination by that defendant." *Id.*, 390 U.S. at 722, 88 S.Ct. at 1320, 20 L.Ed.2d at 258. "This exception," according to the Court, "has been explained as arising from necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." *Id.* at 722, 88 S.Ct. at 1320, 20 L.Ed.2d at 258. The Court in *Barber* noted, however, that the right of confrontation may not be dispensed with by the mere absence of the witness from the jurisdiction. The Court held that: "A witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Id.* at 724–25, 88 S.Ct. at 1322, 20 L.Ed.2d at 260.

Accordingly, the Court in *Barber* held that use at trial of the preliminary hearing testimony of a witness, then in federal prison outside of the state, did not come within the exception to the confrontation clause, since the state exerted absolutely no effort to obtain the presence of the witness at trial other than to ascertain that he was outside the state's jurisdiction. The Court alluded to two procedural devices which the state could have utilized in an attempt to obtain an out-of-state witness in federal custody. The Court also mentioned in a footnote that for witnesses not in prison, the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings provided a means by which prosecuting authorities from one state could secure the presence of an out-of-state witness to testify.

Defendant contends that Twila Weischedel cannot be deemed unavailable absent the State's good-faith effort in comporting with the Uniform Act. We disagree. Defendant's argument proceeds from a misapprehension of the holding in *Barber*. The use of the Uniform Act was mentioned merely by way of dicta. While utilization of the Uniform Act is arguably an indicia of good faith, a good-faith effort is not necessarily negated by the State's failure to use this procedural device. Under the circumstances presented here, the State did not know where the witness was. The only information they had was that she was traveling through the three states of Colorado, Nevada and Arizona. For the Uniform Act to have effect, the witness would have to be found in one of these states. During such time, the State did not have knowledge of her actual whereabouts. It is also important to note that in *Barber* the Court made great mention of the fact that the state knew specifically where the witness was and that absolutely no effort to obtain his presence was made. The holding in *Barber* cannot be read to mean that failure to utilize the Uniform Act alone establishes the lack of good faith. There is no indication that the Court in *Barber* intended that the use or nonuse of the Uni-

form Act be regarded as the sole talisman in determining whether the state proceeded in good faith.

This court in *State v. Carr*, 67 S.D. 481, 294 N.W. 174 (1940), held that it must be affirmatively shown that the party desiring to use the testimony given by a witness on a preliminary examination has used due diligence in his effort to find the witness. We noted in *State v. Carr*, supra, that the mere fact a witness is beyond the jurisdiction of the court is not, in all cases, a sufficient showing to admit the former testimony. Whether due diligence has been shown is a factual question to be determined according to the circumstances of each case. Unless there has been an abuse of discretion, the ruling of the trial judge will not be disturbed. *State v. Erickson*, 241 N.W.2d 854 (N.D.1976); *People v. Phillips*, 61 Mich.App. 138, 232 N.W.2d 333 (1975); *People v. Williams*, 9 Cal.3d 24, 106 Cal.Rptr. 622, 506 P.2d 998 (1973).

The trial court was satisfied that the State had demonstrated due diligence in attempting to secure the witness at trial. Deputy Sheriff Orcutt made inquiry of several employees concerning Miss Weischedel's whereabouts. The state's attorney's office requested that Mrs. Weischedel and Mrs. Rodriguez contact their office the moment Miss Weischedel or her traveling companion contacted them. Furthermore, the subpoena was issued the day following Miss Weischedel's conversation with Deputy State's Attorney Bloomberg. The record reveals that they were traveling through the states of Colorado, Nevada, and Arizona. There is no indication that the parents knew where they would be staying or the duration of their presence in any of these three states. While arguably more could have been done, we do not feel that an all-state bulletin to locate the car is a prerequisite for establishing due diligence on the part of the State under these circumstances. We are satisfied that the State acted with due diligence in attempting to secure Miss Weischedel's presence at trial. Both defendant and her counsel were present at the preliminary hearing and cross-examined Miss Weischedel. Defend-

ant has failed to demonstrate that the trial judge's ruling, in admitting the preliminary hearing testimony of Twila Weischedel at trial, constituted an abuse of discretion.

■ Furthermore, in light of the overwhelming evidence presented against defendant at trial, any error in admitting such evidence was harmless beyond a reasonable doubt under the rule in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). *See also Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In addition to Twila Weischedel's testimony, the State called eight witnesses who were either present that evening at the Old Back Bar or who were directly involved in the investigation. Dr. Michael Glanzer, who treated the victim, was also called to testify. Miss Weischedel's testimony was merely cumulative and was not the principal evidence needed to convict defendant. *Cf. Pointer v. Texas*, supra; *Barber v. Page*, supra.

■ Defendant argues that because a preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial and that a defendant is not availed of the benefits of a complete and adequate cross-examination, the State should afford a greater protection than is currently accorded a criminally accused under the United States Constitution. Thus, defendant maintains that this court should adopt a ruling that testimony taken at such proceedings can never be introduced at trial even if the witness later becomes unavailable. We disagree. While there may be some justification in certain cases for holding that the opportunity for cross-examination of a witness at a preliminary hearing does not satisfy the demands of the confrontation clause where the witness is shown to be actually unavailable, we decline to become affixed to such a confining rule. This court initially embraced this position in *State v. Heffernan*, 22 S.D. 513, 118 N.W. 1027 (1908), but retracted it a year later in *State v. Heffernan*, 24 S.D. 1, 123 N.W. 87 (1909). We do not feel disposed to overrule a long line of precedent

regarding this issue. *See State v. Swiden,* 62 S.D. 208, 252 N.W. 628 (1934); *State v. Carr,* supra; *State v. Watts,* supra.

Accordingly, the judgment of conviction is affirmed.

All the Justices concur.