THE STATE OF IOWA, Appellee, v. CORNELIUS O'BRIEN JR., Appellant.

1.  **Murder:** EVIDENCE: DECLARATIONS OF WITNESS DECEASED. Proof of the declarations of a witness, since deceased, upon the trial of one on preliminary information for assault and battery, may be made in a subsequent trial of the same defendant on a charge of murder, based upon the same act, by a witness who was present at the former trial, and heard the testimony of such deceased witness, and remembers, and can repeat, the substance of the whole of his testimony, though he cannot remember the exact language used by the deceased, nor state the facts in the order in which they were testified to.

2.  ———: ———: ANTE-MORTEM STATEMENT. An *ante-mortem* statement by the victim of an assault resulting in death, made at a time when he believes that his death is near at hand, and giving the facts as he claims them to be, is competent evidence against

one accused of making such assault; and its admission in evidence will not be deemed erroneous by reason of a single incompetent statement therein, which might have been excluded upon the objection of the defendant.

3. ——: DECEDENT'S POSSESSION OF DISEASE OF FATAL NATURE: DEFENSE. The fact that the victim of an assault, resulting in death, was afflicted with a disease of ·a fatal nature, will not justify the wrongful act of his assailant, nor constitute a legal defense to the crime committed. whether the latter had knowledge of decedent's physical condition at the time of the assault or not.

4. ——: VERDICT: SUFFICIENCY OF EVIDENCE. The evidence in this case reviewed by the court, and *held* to sustain a verdict against the defendant for manslaughter.

*Appeal from Mitchell District Court.*—HON. G. W. RUDDICK, Judge.

MONDAY, OCTOBER 13, 1890.

THE defendant was indicted for the crime of murder, and upon a trial was found guilty of manslaughter. He was adjudged to be imprisoned for two years at hard labor in the penitentiary at Anamosa, and to pay the costs, and from that judgment he appeals.

*W. L. Eaton* and *J. M. Moody*, for appellant.

*John Y. Stone*, Attorney General, and *Thos. A. Cheshire*, for the State.

ROBINSON, J.—The state claims, and the evidence tends to show, that the material facts of this case are substantially as follows: Prior to the fifteenth day of July, 1888, the defendant entertained ill will towards one Henry Stocum, on the alleged ground that the latter had accused him of throwing cream cans into the well of a Mr. Lida. He threatened Stocum with physical violence, to different persons, and seemed to be seeking an encounter with him. Both were boys about seventeen years of age, and of about the same size and weight, but Stocum had been affected for some time by a heart trouble, and was not strong. During the

evening of the day named, defendant, accompanied by Warren and Willie Murphy, met Stocum in the highway, and assaulted him, knocking him down, holding and choking him after he was down, and kicking him himself, or causing him to be kicked by Warren Murphy. After Stocum was released, he was chased for a considerable distance. Stocum was much excited by the encounter, and lost health and strength rapidly from that time until the twenty-eighth day of July, 1888, when he died from the effects of the injuries caused by defendant.

It is admitted by defendant that he encountered Stocum at the time and place claimed by the state, and that he then struck him; but he claims that no one was present but himself and Stocum, and that all he did was done in self-defense. He denies that the death of Stocum was the result of injuries received in that encounter, and claims that it was due to causes for which he was not responsible.

I. After the encounter described took place, defendant was arrested and tried on preliminary information, which charged him with the crime of assault and battery committed upon Stocum at the time and place stated. On that hearing Stocum testified in regard to the matter, giving his version of what occurred; and on the trial in the district court several witnesses were examined on the part of the state as to the testimony so given by Stocum. Appellant insists that such evidence was improperly admitted, for the reason that it does not appear that any of the witnesses remembered or testified to all the evidence given by Stocum. It is well settled that a person, who heard and recollects the testimony of a person deceased, may testify in regard to it, and it is not necessary in such a case for the witness to remember and repeat all of what was said in the language used by the deceased. It is sufficient for him to repeat the substance of all the testimony of the deceased. *Small v. Chicago, R. I. & P. Ry. Co.*, 55 Iowa, 582; *Fell v. Burlington, C. R. & N. Ry. Co.*, 43 Iowa, 177;

1. MURDER: evidence: declarations of witness deceased.

*Harrison v. Charlton*, 42 Iowa, 573; *Rivereau v. St. Ament*, 3 G. Greene, 118. And the same rule is applicable in criminal cases. *State v. Fitzgerald*, 63 Iowa, 268.

The witnesses in question repeated the substance of Stocum's testimony. Some were unable to give the order in which the statements were made, but we do not think that was a fatal objection. One witness testified that he did not remember the questions asked Stocum on cross-examination, nor any of them, and he did not know that he remembered any of the testimony he gave on cross-examination. He had stated that his recollection was good enough to give the substance of Stocum's testimony, and if he meant by his answers, with respect to the cross-examination, that he did not recollect what part of the testimony was given on the direct, and what part on the cross-examination, we do not think he showed that his testimony was not competent. The material question was, what did Stocum say, not in what order did he say it? If he meant that he did not recollect what Stocum said on cross-examination, his testimony was not competent, and, on application, should have been excluded. *Harrison v. Charlton*, 42 Iowa, 573. But his answers now under consideration were given at the close of his examination, and it does not appear that any effort was then made to exclude his testimony.

II. A short time before his death, Stocum made a statement in regard to the assault of defendant, giving the facts, as he claimed them to be. Appellant objected to proof of what he said. We think it was competent. It clearly appears that, at the time he made the declaration, he believed that he should not recover, and that his death was near. He was despondent, and sent for a priest to prepare him for death. Most of what he said was a narration of facts, but he also said that "everybody would know that Corny O'Brien and Warren Murphy were the cause of his death." It may be admitted that the statement was incompetent, and should have been

2. ——: ——: ante-mortem statement.

excluded on objection; but the question did not indicate the character of the answer which was made, and no objection was offered to the answer as given, and defendant cannot now be heard to complain of it.

III. It is suggested that the verdict is not supported by the evidence, and that it is not shown that

3. —: decedent's possession of disease of fatal nature: defense.

the death of Stocum resulted from injuries inflicted by the defendant. The evidence shows that decedent had not been in good health for several months. About three weeks before the assault in question, he consulted a physician, who found his heart in a diseased condition, and treated him for heart difficulty. He improved steadily under that treatment until the assault was made. If his testimony at the preliminary examination and his dying declaration were correct, he was choked and kicked and otherwise grossly maltreated by defendant. It is certain that he was greatly excited by the encounter. Immediately after it occurred he applied at a house in the vicinity for shelter, stating that he was afraid to go home on account of defendant and the Murphy boys. A witness says of his appearance at that time: "He acted just scared to death. His face was as pale as death; his lips were swollen. His hat was torn and had mud on both sides." His health failed rapidly from that time. A witness who saw him the day after the assault describes his appearance and condition as follows: "I discovered he was in pretty bad shape; he was pale, haggard; almost impossible for him to breathe. I thought he would reel right over on the stoop there. His shoulder blades worked like a bellows. His voice was weak. His lips, dark blue." The medical testimony shows that his condition and failing health after the assault, and his death, were natural and probable results of his physical condition on the night of July 15, and of great excitement and physical exertion. It was the province of the jury to determine whether the wrong of defendant caused or contributed to decedent's death. The fact that he was afflicted

4. —: verdict: sufficiency of evidence.

with a disease which might have proved

fatal would not justify the wrongful acts of defendant, nor constitute a defense in .law. *State v. Smith*, 73 Iowa, 32. Nor would ignorance on the part of defendant of the diseased physical condition of Stocum excuse his acts. *State v. Castello*, 62 Iowa, 404. We think the evidence sufficient to sustain the verdict, and find no error prejudicial to defendant of which he can complain. The judgment of the district court is AFFIRMED.