(119 So. 610)

**MORGAN HILL PAVING CO. v. FONVILLE.**
**(6 Div. 17.)**

Supreme Court of Alabama.   Dec. 6, 1928.

Rehearing Denied Jan. 24, 1929.

Coleman, Coleman, Spain & Stewart and McClellan & Stone, all of Birmingham, for appellant.

572

Stokely, Scrivner, Dominick & Smith, of Birmingham, for appellee.

THOMAS, J. The suit is for personal injuries to passenger in an automobile. Defendant was a contractor, doing the work of paving a public highway. The locus in quo was where a detour sign was placed upon a part of that paved roadway. The trial was upon count 4, declaring for the maintenance of the obstruction partly across the public highway, and the negligent failure—

"to have and maintain proper lights, signals or other warning of the presence of said barricade, plank or other obstruction across or partly across said highway at said point, and as a proximate consequence of said negligence, the said automobile in which the plaintiff was riding as a guest as aforesaid was wrecked or turned over, and plaintiff was injured, as hereinabove set out."

Several pleas charged contributory negligence of plaintiff and to the driver of the car. In the interrogatories propounded under the statute, and introduced in evidence, is the admission by defendant that, under its contract with the duly constituted state commission or authority, it was required that the defendant contractor—

"shall provide, erect and maintain all necessary barricades, suitable and sufficient red lights,

danger signals and signs and take all necessary precautions for the protection of the work and safety of the public. Highways closed to traffic shall be protected by effective barricades on which shall be placed acceptable warning signs. The contractor shall provide and maintain acceptable warning and detour signs at all closures, intersections and along the detour routes, directing traffic around the closed portion or portions of the highway, so that temporary detour route or routes shall be indicated clearly throughout its or their entire length. All barricades and obstructions shall carry red lights at night and such lights shall be kept burning from sunset until sunrise."

It is suggested as a pertinent inquiry, whether such independent contractor enjoys the peculiar privilege, as does the state, of immunity from suits for personal injuries sustained by travelers on the highway undergoing construction, maintenance, or repair? Decisions in the federal courts deny that immunity of the sovereign to protect such contractor. Hopkins v. Clemson, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A. (N. S.) 243; Thompson-Caldwell Const. Co. v. Young (C. C. A.) 294 F. 145. In the Hopkins Case, supra, it is declared:

"And, looking through form to substance, the Eleventh Amendment has been held to apply, not only where the state is actually named as a party defendant on the record, but where the proceeding, though nominally against an officer, is really against the state, or is one to which it is an indispensable party. No suit, therefore, can be maintained against a public officer, which seeks to compel him to exercise the state's power of taxation, or to pay out its money in his possession on the state's obligations, or to execute a contract, or to do any affirmative act which affects the state's political or property rights. Cunningham v. Macon & B. R. Co., 109 U. S. 446, 27 L. Ed. 992, 3 Sup. Ct. Rep. 292, 609; North Carolina v. Temple, 134 U. S. 22, 33 L. Ed. 849, 10 Sup. Ct. Rep. 509; Louisiana ex rel. New York Guaranty & I. Co. v. Steele, 134 U. S. 230, 33 L. Ed. 891, 10 Sup. Ct. Rep. 511; Louisiana v. Jumel, 107 U. S. 711, 27 L. Ed. 448, 2 Sup. Ct. Rep. 128; Pennoyer v. McConnaughy, 140 U. S. 1, 35 L. Ed. 363, 11 Sup. Ct. Rep. 699; Re Ayers, 123 U. S. 443, 31 L. Ed. 216, 8 Sup. Ct. Rep. 164; Hans v. Louisiana, 134 U. S. 1, 33 L. Ed. 842, 10 Sup. Ct. Rep. 504; Harkrader v. Wadley, 172 U. S. 148, 43 L. Ed. 399, 19 Sup. Ct. Rep. 119; Hagood v. Southern, 117 U. S. 52, 70, 29 L. Ed. 805, 811, 6 Sup. Ct. Rep. 608.

"But immunity from suit is a high attribute of sovereignty, a prerogative of the state itself, which cannot be availed of by public agents when sued for their own torts. The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. For how 'can these principles of individual liberty and right be maintained if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders * * * whenever they interpose the shield of the state? * * * The whole frame and scheme of the political institutions of this country, state and Federal protest' against extending to any agent the sovereign's exemption from legal process. Poindexter v. Greenhow, 114 U. S. 270, 291, 29 L. Ed. 185, 193, 5 Sup. Ct. Rep. 903, 962.

"The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or threatened by public officers. If they were indeed agents, acting for the state, they—though not exempt from suit—could successfully defend by exhibiting the valid power of attorney or lawful authority under which they acted. Cunningham v. Macon & B. R. Co., 109 U. S. 446, 452, 27 L. Ed. 992, 994, 3 Sup. Ct. Rep. 292, 609. But, if it appeared that they proceeded under an unconstitutional statute, their justification failed, and their claim of immunity disappeared on the production of the void statute. Besides, neither a state nor an individual can confer upon an agent authority to commit a tort, so as to excuse the perpetrator."

Authorities are collected in Solberg v. Schlosser, 20 N. D. 307, 127 N. W. 91, 30 L. R. A. (N. S.) 1111; Wade v. Gray, 104 Miss. 151, 61 So. 168, 43 L. R. A. (N. S.) 1046.

The subject has been approached in this jurisdiction as follows:

"The evidence shows that the subcontractor was engaged in work on the section of road sought to be closed to public travel. * * * The subcontractor, with relation to the work committed to him, was an independent contractor and not an employee. As a general rule, the law of respondeat superior does not obtain in such case.

"An exception, however, obtains where a duty to the public exists in the manner of executing the work undertaken by the contractor. Such duty exists when the execution of the work tends to create a nuisance; when it is dangerous within itself, as in blasting operations; when the work requires the creation of dangerous conditions, such as ditches and the like in a public highway; or generally when the maintenance of safe conditions in connection with the work is essential to the protection of the public. In such case the chief contractor cannot transfer his public duty to a subcontractor." Thomas v. Saulsbury & Co., 212 Ala. 245, 246, 102 So. 115, 116.

That highway was under construction by state authorities, and an independent contractor and subcontractor were doing the work; a barrier was placed across the way, which caused injury to a passenger. The primary inquiry was whether the evidence tended to fasten liability upon the contractor for such injury, caused by the negligence of the subcontractor; held the duty was nondelegable, and liability to exist as to contractor. That is, the judgment in the lower court on the theory of nonliability was reversed, and this action was on the assumption or recognition of responsibility of the contractor in regard to the public on the highway. It was a holding of nondelegability

and denial of immunity to the contractor. The statutes deal at length (chapter 32, vol. 1, Code, §§ 1298, 1397) with the subject of construction, etc., of highways, and recognize the right of contract by state authorities with municipalities, individuals, firms, or private corporations, for repair or maintenance of public roads, etc. These statutes do not undertake to relieve contractors from liability. Sections 1327, 1328, Code. And when all of its provisions are considered is found the due regard and protection of the public and passengers on the highways. The bond required is for the faithful and prompt performance of "the contract [or agreement] and all the conditions and requirements thereof." There is slight analogy to be found in the cases of Union Indemnity Co. v. State, for Use of McQueen-Smith Farming Co., 217 Ala. 35, 114 So. 415, Bank of Luverne v. Ala. Bank & Trust Co., 217 Ala. 635, 117 So. 219, and Union Indemnity Co. v. State for Use of Armstrong & Bro. Co., ante, p. 132, 118 So. 148.

■ The contract with the state required of the contractor the maintenance of sufficient lights or signals on barricades, or detour boards, placed upon the public roads under construction or maintenance work. Thus was the assertion of nonliability on the state and its officials, and that of recognition or imposition of responsibility for negligence upon the contractor. The right of maintenance of action for negligent failure of duty was recognized, as we have indicated, in Thomas v. Saulsbury, 212 Ala. 245, 102 So. 115. And it follows that the decisions cited (Montgomery City v. Ross, 195 Ala. 362, 70 So. 634; Lee County v. Yarbrough, 85 Ala. 590, 5 So. 341; Brown v. Shelby County, 204 Ala. 252, 85 So. 416; Phillips v. Tuscaloosa County, 212 Ala. 357, 102 So. 720; 25 A. L. R. 438; 29 C. J. 371, 677, § 44) do not militate against the maintenance of a suit for negligence against an independent contractor, in a proper case.

■ The respective duties of owner and driver of the car to a passenger or guest in the car have been recently considered by this court (Perkins v. Galloway, 194 Ala. 265, 69 So. 875, L. R. A. 1916E, 1190; L. R. A. 1918C, 276; 20 A. L. R. 1014, note; Galloway v. Perkins, 198 Ala. 658, 73 So. 956), and the duty of the owner and driver to guests in the car is stated at length (Perkins v. Galloway, supra; Id., 198 Ala. 658, 73 So. 956). See, also, McGeever v. O'Byrne, 203 Ala. 266, 82 So. 508; Rush v. McDonnell, 214 Ala. 47, 51, 106 So. 175; Garner v. Baker, 214 Ala. 386, 108 So. 38. From this rule of due and reasonable care owing to the guest in the car, by the owner and driver (Rush v. McDonnell, 214 Ala. 47, 51, 106 So. 175; Garner v. Baker, 214 Ala. 385, 386, 108 So. 38), comes the corresponding requirement of the guest from his knowledge of the facts and appreciated circumstances sufficient to call into effect the duty in the premises by the guest to the own-

er and driver. It is that the passenger or guest in the car is required to observe due care as to his own safety, as against known and appreciated circumstances and danger. McGeever v. O'Byrne, 203 Ala. 266, 268, 269, 82 So. 508, high speed case; B. R. L. & P. Co. v. Barranco, 203 Ala. 639, 84 So. 839, intoxication of driver; Birmingham Sou. R. Co. v. Harrison, 203 Ala. 284, 82 So. 534; Cent. of Ga. R. Co. v. Jones, 195 Ala. 378, 70 So. 729; Robinson Co. v. Swiney, 206 Ala. 617, 91 So. 476; Jefferson v. Republic Iron & Steel Co., 208 Ala. 143, 93 So. 890; Reed v. Ridout's Ambulance, Inc., 212 Ala. 428, 102 So. 906; Rush v. McDonnell, supra; Garner v. Baker, supra; McDermott v. Sibert, post, p. 670, 119 So. 681; 20 A. L. R. 1014, note.

The rule of good pleading by way of defense is stated in B. R., L. & P. Co. v. Gonzalez, 183 Ala. 273, 278, 279, 61 So. 80, to the effect that facts be alleged which are sufficient in themselves to show negligence as a conclusion of law, or to reasonably suggest it as an inference of fact. The court declared:

"In the latter case, the facts being proved, negligence vel non is a question of inferential fact for the jury; and, the facts being consistent with a negative inference, it is essential that the plea should color the equivocal facts by supplying the conclusion that plaintiff's conduct was negligent. Pace v. L. & N. R. R. Co., 166 Ala. 519, 52 So. 52, 54. Where plaintiff's conduct is not per se negligent, but may be so by reason of attending circumstances, these circumstances must be shown by appropriate averment, as far as is reasonably practicable, though, brevity being the soul of good pleading, shorthand statements may often suffice, when their ultimate constituents would be tedious or difficult of rehearsal."

And in Birmingham Ry., Light & Power Co. v. Barranco, 203 Ala. 639, 642, 84 So. 839, 842, this court said:

"The facts averred in a plea of contributory negligence must ordinarily invite a conclusion of law that the act or omission alleged characterized plaintiff's conduct or omission as negligence, or where the full allegation of the fact and circumstances in such plea are in themselves equivocal with respect to negligence vel non, the pleader must aver his conclusion that the act or omission charged was negligence."

See Hurt v. Southern Ry. Co., 205 Ala. 182, 87 So. 533; Schmidt v. M. L. & R. Co., 204 Ala. 694, 87 So. 181.

We may observe at the outset that the question of sustaining demurrer to pleas as to averments of the fact that the driver was maimed and drove recklessly may not be dismissed from consideration on the ground that the matters of the pleas were sufficiently covered in plea 6, to which demurrer was overruled. Davis v. Sorrell, 213 Ala. 191, 104 So. 397; City of Birmingham v. Mauzey, 214 Ala. 476, 108 So. 382. The matters set up in rejected pleas are found not to become litigable issues in pleas 5, 6, and A, to which demur-

rers were overruled, as stated in plea 3; that is, however, when plea 3 is considered with count 4, on which the trial was had, reversible error was committed by sustaining demurrer thereto. B. R., L. & P. Co. v. Gonzalez, 183 Ala. 273, 278, 61 So. 80, Ann. Cas. 1916A, 543. The gravamen of the count was negligent failure of defendant to the plaintiff, as a member of a class of the general public, to be protected in respect to the maintenance of a barricade upon the highway, with proper lights, signals, or other proper warnings of the presence of said obstruction and detour, etc., and as a proximate consequence of such negligence the automobile in which plaintiff was riding as a guest was wrecked and turned over in the effort to avoid collision with the obstruction indicated in that pleading. This the pleas sought to answer.

■■■ It is true this court is committed to the principle that it is not the duty of the driver of a vehicle on a highway to be on the constant lookout for obstructions on such thoroughfare. In the absence of knowledge, he had the right to presume the way was free of obstructions (City of Huntsville v. Phillips, 191 Ala. 524, 67 So. 664; Mayor of Birmingham v. Tayloe, 105 Ala. 176, 16 So. 576; City of Montgomery v. Ferguson, 207 Ala. 433, 93 So. 4); that there is no duty upon the guest to anticipate, in the absence of facts imputing knowledge (Birmingham Sou. R. Co. v. Harrison, 203 Ala. 284, 82 So. 534), that the driver of the vehicle in which he is riding will be negligent in operating the car. This finds support in the application of the rule in Central of Ga. R. Co. v. Jones, 195 Ala. 378, 70 So. 729, holding subject to demurrer pleas requiring the guest in an automobile, as a matter of duty growing out of that relation, to look out for the approach of a train at public crossings, when the person riding therein had no control of the driver or the vehicle. Crescent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49; Alabama Power Co. v. Pentecost, 210 Ala. 167, 97 So. 653; Johnson v. L. & N. R. Co., 203 Ala. 86, 82 So. 100; McGeever v. O'Byrne, supra; Birmingham Sou. R. Co. v. Harrison, supra; B. R. L. & P. Co. v. Barranco, supra; Cunningham v. L. & N. R. Co., 209 Ala. 327, 330, 96 So. 358. That is, there is no duty on the guest, in the absence of "knowledge of facts charging him with that duty, to anticipate that a driver will be negligent, reckless, or incompetent" in the operation of the car and in keeping a proper lookout. However, when he is negligent, reckless, or incompetent, and this is known to the guest, the duty of "due care" on the part of the guest arises. B. R. L. & P. Co. v. Harrison, supra; Thomas v. Carter, ante, p. 55, 117 So. 634.

Plea 3 does not specifically charge plaintiff with knowledge of the obstruction and conditions on the way, as are stated in pleas 5, 6, and A; did not specifically charge that plaintiff knew that the car was proceeding at the reckless rate of speed of 50 to 60 miles per hour, nor charge "knowledge of said facts, circumstances, and conditions," as was charged in plea 6. It contained specific averment of the locus in quo and approach thereto along the highway; that it was a straight road north of detour, and that the car driven by Dye was approaching this detour sign "at a dangerous and reckless rate of speed," in the nighttime, etc. The plea concludes with the averment that Dye was maimed, in that his right arm was amputated between the wrist and elbow, "leaving him without the use of his right hand, and his left had been injured in such sort that" said driver "did not have the free use thereof," and that—

"notwithstanding the dangerous and reckless rate of speed at which the said Dye was driving the automobile in which the plaintiff was riding, and notwithstanding the maimed condition of the said Dye while so driving said automobile, which facts were known to plaintiff, the plaintiff negligently failed to protest against the speed at which the said Dye was driving said car, and did not request the said Dye to cease driving at such dangerous and reckless rate of speed, and negligently continued to ride in said car while being so negligently driven by the said Dye. And this defendant further says that, as the direct and proximate result of the negligence of the said Dye in so driving said car at such reckless and dangerous rate of speed, the car was caused to run off the pavement on said highway and was overturned, and in being so overturned the plaintiff was injured as complained of. And this defendant further avers that the negligence of the plaintiff in failing to protest and object to the said Dye driving the car in which he was riding at a reckless and dangerous rate of speed as aforesaid proximately contributed to the damage and injuries sustained by the plaintiff of which he complained."

The recital of the condition of the driver was not the gravamen of the plea, but by way of illustration of the failure to protest under the circumstances of time, place, and condition, as they proceeded at the dangerous and reckless rate of speed in the nighttime, and as is averred and characterized in the plea as negligence that proximately contributed to the damage and injury sustained by the plaintiff, of which he complained. It may be true that the recitals of the maimed condition of the driver do not show his incapacity, as a matter of law. This condition is by way of recital, and not the gravamen of the plea, and sought as aid of the averment of negligence set up in that plea—that of the failure to "protest and object to the said Dye driving the car in which he was riding at a reckless and dangerous rate of speed," as stated in that plea. When the plea is considered as a whole, and its relation to the complaint, the same is brought within the influence of the decision in B. R., L. & P. Co. v. Gonzalez, 183 Ala. 273, 279, 61 So. 80, Ann. Cas. 1916A, 543, and Pace v. L. & N. R. Co., 166 Ala. 519, 524, 52 So. 52, 54, where from the "facts as

they are and as they must be alleged different minds might draw different conclusions, it is the office of the pleader to draw the conclusion necessary to the maintenance" of the defense, and the duty of requesting a reduction of speed, or that of his declining to proceed further as a guest in the car, results or is deducible therefrom; that is, the facts averred may be characterized as negligence under the alternative doctrine of Pace v. L. & N. R. Co., 166 Ala. 519, 52 So. 52, and B. R., L. & P. Co. v. Gonzalez, 183 Ala. 273, 278, 279, 61 So. 80, Ann. Cas. 1916A, 543.

The plea, considered as a whole, presents the matter set up for the jury, and the matters reasonably admitting of different conclusions from the facts alleged in the pleas, as insisted by appellant's distinguished counsel, alleged in conclusion of negligence as is permitted by the rule announced in L. & N. R. Co. v. Pace, supra; Shelby Iron Co. v. Bierly, 202 Ala. 422, 80 So. 806; Hurt v. Southern Ry. Co., 205 Ala. 179, 182, 87 So. 533; B. R., L. & P. Co. v. Gonzalez, 183 Ala. 273, 278, 61 So. 80, Ann. Cas. 1916A, 543. There was error in sustaining demurrer to the plea.

Since the case must be retried, we will consider other questions that may be presented on retrial. The testimony of appellee as a witness in his own behalf, and of Dye, Blalock, Stoneseifert, Popwell, Wyatt, Gore, Looney, Gerald, Moore, and Galloway, gave evidence affording the reasonable inference that the obstruction was not lighted, or, if so, not sufficiently lighted, and the admission of De Loach on cross-examination was susceptible to an adverse inference. A conflict in the evidence, or an adverse inference on this material question, is found in the testimony, or reasonable inference therefrom, of Sitten, De Loach, Edge, and Villadsen. There is a reasonable tendency of conflict found in the minor, yet important, details of placing the signals, in the testimony of Sitten and De Loach.

In Jones v. Bell, 201 Ala. 336, 77 So. 998, an adverse tendency of evidence that prevented affirmative instruction developed in the direct and cross examination of one witness. See McMillan v. Aiken, 205 Ala. 35, 40, 88 So. 135, for the authorities and rules governing the giving or refusing of affirmative instructions requested by the parties. Adverse inference, or that presenting conflict in evidence is in the stated facts, as to whether or not Sitten worked that day; when the two witnesses arrived at De Loach's, and how they came from work to Cooper's; when the witnesses left De Loach's and got to the detour sign, or place of accident; and how the signal or light was placed thereon, or affixed thereto, and the manner of its security from interference by passing vehicles, wind, or third persons. There were material questions of fact for the jury, bearing upon the ultimate fact of the discharge of duty, or the failure thereof, of maintenance of proper signals upon the obstruction placed on the public highway.

Likewise the testimony of W. L. Powell, as to the detour sign having had thereon a reflector or light signal; the witness saying he "saw it there the next morning," and had seen it "on that detour sign for some time," as he went by that way on other occasions preceding the accident, and that of S. B. Powell that he did not see a light on the detour sign, but saw a lantern "broke in the road there"—scattered all over the road; was not positive whether before or after the accident, but thought it was "after." His redirect examination was certain that the red reflector was there "shortly after they put on that detour sign," and that it "remained on the detour sign up to the time and after the accident," made jury questions.

So the testimony of L. D. Edge was to the effect that he had seen the reflector on the sign and saw it the next morning, after the time in question. The witness Moore testified that he had often seen the sign and did not see a reflector on the sign until after the accident. The testimony of defendant's witnesses presented a conflict in evidence as to the light, reflector, and maintenance of the proper barricade on the highway. The facts were for the jury.

Appellant urges that, when it placed the light upon the detour sign in the evening, its duty in the premises ceased. We have indicated that the defendant had assumed the maintenance of proper signals. The case of St. Louis-San Francisco R. Co. v. Guthrie, 216 Ala. 613, 114 So. 215, 56 A. L. R. 1110, is not in point. The train, in stopping on the highway, violated no law or rule of conduct. Here the initial duty in placing the dangerous object or obstruction was to protect the public at such point. Thomas v. Saulsbury & Co., 212 Ala. 245, 102 So. 115; Kearns v. Mobile Co., 196 Ala. 99, 71 So. 993; City of Albany v. Black, 214 Ala. 359, 108 So. 49. We cannot declare, as a matter of law, that there were lights exhibited of sufficient number or location for the purpose, circumstances, and time of the night. We have indicated that there was conflict in evidence as to this. Moreover, there is no evidence that the lantern if fixed to the sign, had sufficient oil to support it to the time of the accident. And as a matter of law the court cannot say that one light was sufficient, without the reflector; that was for the jury.

The necessities of the case—as that of the new mode of travel and renewed activities in maintenance of highways—are remarked upon in Wasser v. Northampton County, 249 Pa. 25, 27, 94 A. 444, 445, L. R. A. 1915F, 973, 975. That court said:

"There is no hard and fast rule as to the kind and character of a guard rail or barrier to be erected so that the highway may be deemed

reasonably safe for the ordinary needs of travel. Public roads are intended for ordinary travel; if they meet the requirements which their ordinary uses demand, the authorities in charge of them have performed their duty under the law, and cannot be made answerable in damages for extraordinary accidents occurring on them. Hey v. Philadelphia, 81 Pa. 44, 22 Am. Rep. 733. * * * It is true, of course, that the ordinary needs of travel change with changed circumstances, and road officers must keep in mind the new uses of travel in the construction and maintenance of highways."

In Brengman v. King County, 107 Wash. 306, 181 P. 861, is the statement that the duty of placing lights on highway barricades is discharged only when they are of such number and so exhibited and fastened, as that automobile drivers would not be liable to destroy them in passing, and that the question of whether they were so constructed and lighted at the time and place is usually for the jury. Sutton v. City of Snohomish, 11 Wash. 24, 39 P. 273, 48 Am. St. Rep. 847; Reed v. City of Spokane, 21 Wash. 218, 57 P. 803.

In Kearns v. M. L. & R. Co., 196 Ala. 99, 71 So. 993, is the observation that, as a general rule, the sufficiency of barriers and signals to give reasonable warnings of or security against danger, with respect to the character, number, and arrangement, is generally a question of fact. L. & N. R. Co. v. Clark, 205 Ala. 152, 87 So. 676, 14 A. L. R. 695; Morgan v. Mobile & Ohio R. Co., 202 Ala. 461, 80 So. 845; City of Albany v. Black, 214 Ala. 359, 361, 108 So. 49.

Adverting to the issue presented by the two classes of pleas (for example, pleas 4 and 6), it will be noted that in plea 4 it is sought to plead a joint enterprise, in which plaintiff and Dye, the driver, are charged with the same right of control over the car in which they were riding at the time of the injury, and that a dangerous and reckless rate of speed was maintained, and the negligent failure on plaintiff's part to protest, and it ascribes his injury as the proximate result of negligence while riding in the car so driven by Dye. In Crescent Motor Co. v. Stone, 211 Ala. 516, 101 So. 49, under which plea 4 was drawn, two men were engaged in one effort to deliver the car being driven by them. That decision rested upon the basic fact of joint and equal control of the operation of the car, and that the driver "was acting for the other as well as himself."

In the instant issue of fact, it was that of respective individual pleasure, not joint effort of the men in the car—Dye, the owner and operator; plaintiff and another, as guests. The fact that each was going to hunt at Letohatchie, without more, constituted no common enterprise or adventure, as affecting the joint operation and control of the car as driven by Dye. The court submitted this issue of joint enterprise and control, and the verdict was against the plea. Such was the evidence of Dye and the plaintiff, and there was no adverse reasonable inference to the contrary.

Plea 6 (among other things) charged the negligence of plaintiff in being driven at a high rate of speed by Dye under the circumstances set out. As a matter of law, it is not shown that the automobile was operated at the time at excessive speed, or that plaintiff knew it, or that he was aware of the detour sign on the way, requiring a reduction of speed or the making of a detour. There was no evidence that the driver was not efficient and capable, or unable to properly operate and control the car with the required efficiency of an ordinarily careful and prudent driver. On the part of plaintiff, the evidence showed without dispute that Dye was an experienced, capable, and efficient driver, and capable of observing and discharging the due operation of cars in usual travel and in any reasonable emergencies on the public highways. These questions were for the jury. Blalack et al. v. Blacksher, 11 Ala. App. 545, 550, 66 So. 863.

And on the phase of the plea as to Dye's said physical condition, in order to sustain that condition, as a matter of law, defendant was required to prove (freed from reasonable adverse inference) that Dye was incompetent as a driver by reason of alleged physical infirmities; that this fact was known and appreciated by plaintiff; hence negligence to continue to ride with him to the place of injury. This issue was for the jury under the evidence. Birmingham Southern Ry. Co. v. Harrison, 203 Ala. 284, 82 So. 534; McDermott v. Sibert, post, p. 670, 119 So. 681.

It is urged by appellant that, if there was negligence on the part of defendant in maintaining the barricade with insufficient lights, such failure of duty was not the proximate cause of plaintiff's injury; but that effect in the line of proximate causation must be ascribed to the owner and driver of the car. As affecting the rights of the plaintiff, if the driver was keeping a proper lookout and saw the obstruction as soon as it was visible from the side of his approach, and, under the circumstances permitted or created by defendant, acted with due dispatch and skill to stop or divert the car, required or permitted under the sudden appearance of danger which surrounded him, and of the suddenness of the surprise and want of time for deliberation, acted as a reasonably prudent person might have acted under such circumstances, and was not able to stop or divert the car, so as to avoid injury, the injury that resulted may be ascribed to and as a proximate cause of defendant's negligence in the maintenance of the warning signal, and not alone to the approach, if at high speed, of Dye driving his car.

Mr. Beale divides the subject of causal connection or direct result of an active force, and as. a proximate result, into classes, stated as follows:

"(a.) Injury direct and immediate, but unforeseeable," as fatal assault on a victim with heart disease. State v. O'Brien, 81 Iowa, 88, 46 N. W. 752.

(b) "Injury caused by direct transmission of defendant's force." Hill v. Winsor, 118 Mass. 251; A. G. S. R. Co. v. Chapman, 80 Ala. 615, 2 So. 738.

(c) "Injury caused by aggravating a pre-existing disease or unhealthy condition," as aggravation by defendant's act of a latent disease. Vosburg v. Putney, 80 Wis. 523, 50 N. W. 403, 14 L. R. A. 226, 27 Am. St. Rep. 47; Hahn v. D., L. & W. R. Co., 92 N. J. Law, 277, 105 A. 459.

(d) "Injury caused through the creation and later development of a septic or diseased condition." Armstrong v. Montg. St. Ry. Co., 123 Ala. 233, 26 So. 349; Day v. G. E. C. Co., 104 Wash. 575, 177 P. 650; Pullman Co. v. McGowan (Tex. Civ. App.) 210 S. W. 842; Clarke v. N. A. C. Co., 180 Cal. 76, 179 P. 195.

(e) "Injury caused through subsequent action of already operating natural forces," as where the master of a vessel negligently "missed stays in a high wind and flood tide, and the wind and tide carried the vessel against a sea wall and injured it." Romney Marsh v. Trinity House, L. R. 5 Ex. 204.

Beale in 33 Harvard Law Rev. 740.

The general rule of "direct line and sequence of causation" is stated for us by Mr. Chief Justice McClellan in Armstrong, Adm'x, v. Montgomery St. R. Co., 123 Ala. 233, 249, 26 So. 349, 353. If we may further illustrate with some of our cases, note that in A. G. S. R. Co. v. Arnold, 80 Ala. 600, 2 So. 337, where the negligent failure of a light on the platform, and not the misstep in the dark, was held to be the proximate cause of the injury; A. G. S. R. Co. v. Chapman, 80 Ala. 615, 2 So. 738, negligent operation of a train, precipitating a cow from the track against a person, was the proximate cause of his injury. That of remote cause is King v. Henkie, 80 Ala. 505, 60 Am. Rep. 119, where the illegal sale of liquor to one intoxicated, causing injury, held not proximate cause; Dye-Washburn Hotel Co. v. Aldridge, 207 Ala. 471, 93 So. 512, where the insecure fastening of a window screen, knocked out by the active force of the guest, was held remote as to the hotel company's maintenance of the window screen.

After definitions of proximate cause by this court (Western Ry. of Ala. v. Mutch, Adm'r, 97 Ala. 194, 11 So. 894, 21 L. R. A. 316, 38 Am. St. Rep. 179; Armstrong, Adm'x, v. Montgomery Street Ry. Co., 123 Ala. 233, 26 So. 349; M. & O. R. Co. v. Christian Moerlein Brewing Co., 146 Ala. 404, 41 So. 17), it may be that it was unnecessary for the writer to have done more than cite the leading cases. However, I have thought it well to advert to Mr. Beale's article, with the hope that it will aid members of the profession (as it has helped the writer) in proceeding, in inverse order, from the effect and result to arrive at the proximate cause thereof.

In Norwood Co. v. Bickell, 207 Ala. 232, 92 So. 464, is quoted with approval 1 Thompson on Neg. 197, and the statement of the rule of sudden and unwarned peril and the required action under such circumstances. Cook v. Cent. Railroad & Banking Co. of Ga., 67 Ala. 533, 22 A. L. R. 1294. Had plaintiff remained in the car, proceeding at a high rate of speed, at other time and place, his rights in the premises would not be affected, except as to his discovery of the circumstances and peril. However this may be, we are forced to the answer, under the pleading and evidence, whether or not a plaintiff's injury may be ascribed as a proximate cause of a defendant's negligent acts in the premises, though the rate of speed and conduct of the driver might have co-operated to the injurious result; that is, if a jury so finds as a matter of fact.

The question of proximate or remote cause is the consideration of active force or risk—the "result of impression of active force upon a passive force, or of two or more active forces acting on each other." There must be one active force, and may be two or more coexisting and co-operating forces to the same injurious effect, as its proximate cause. Mr. Joseph H. Beale states the problem as follows:

"When one is responsible for the operation (a) of an active force which he has created; (b) of an active force which acts upon a passive force which he has created, or upon a passive force which he is legally bound to change. Each time one or more active causes operate on a condition to create a new condition, a new causal step is taken, ending with the given result."

See City Delivery Co. v. Lecari, 210 Ala. 629, 634, 98 So. 901, where an ordinance was violated in leaving a mule unhitched and its movement injured a passer-by; held not the natural and probable consequence of violation of the ordinance, that violation was the remote cause of the injury. The violation of the ordinance must have caused the injury, and must have been enacted for the benefit of the party who seeks to invoke its violation, said the court. Watts v. Montgomery Traction Co., 175 Ala. 102, 57 So. 471.

In Garrett v. L. & N. R. Co., 196 Ala. 52, 71 So. 685, the decision was that (1) where two or more successive causes, unrelated in operation, to some extent contributed to an injury, and there is an intervening and direct cause, the law considers only the proximate cause, and not the prior and remote cause; (2) where the prior cause did no more or merely *created the condition* (or give rise to the occasion), and after the condition had been created an intervening agency produced the injury, the first cause is not the proximate cause. St. Louis-San Francisco Ry. Co. v. Guthrie, 216 Ala. 613, 114 So. 215,

580

56 A. L. R. 1110; Atchison, etc., Ry. Co. v. Calhoun, 213 U. S. 1, 29 S. Ct. 321, 53 L. Ed. 671; Crowley v. West End, 149 Ala. 613, 43 So. 359, 10 L. R. A. (N. S.) 801; Mo. Pac. Ry. Co. v. Columbia, 65 Kan. 390, 69 P. 338, 58 L. R. A. 399. See, also, Wheeler v. Standard Steel Co., 196 Ala. 634, 72 So. 254; Whiteman v. M. & O. R. Co., 217 Ala. 70, 114 So. 912; Huntsville Knitting Co. v. Butner, 198 Ala. 528, 73 So. 907.

In Burnett v. Ala. Power Co., 199 Ala. 337, 74 So. 459, where the vegetation on the land merely *produced a condition*, and the intervening proximate cause of the result was the negligent backing of the water by means of the dam upon such condition; that is, the first or remote cause was permitting logs and vegetation to remain on the land and the subsequent intervening and proximate cause of injury was the negligent or wrongful checking and backing of water over that condition, causing the injury. Alabama Fuel & Iron Co. v. Vaughn, 203 Ala. 461, 83 So. 323; Dwight Mfg. Co. v. Vaughn, 203 Ala. 462, 83 So. 327; Clinton Min. Co. v. Loveless, 204 Ala. 77, 85 So. 289; B'ham News Co. v. Andrews, 204 Ala. 649, 87 So. 168; Montgomery L. & P. Co. v. Thombs, 204 Ala. 678, 87 So. 205; Shafer v. Myers, 215 Ala. 678, 112 So. 230; Godfrey v. Vinson, 215 Ala. 166, 110 So. 13; City Ice Delivery v. Lecari, 210 Ala. 629, 98 So. 901; Marbury Lbr. Co. v. Jones, 206 Ala. 669, 91 So. 623, 23 A. L. R. 309; Nashville v. Nance, 212 Ala. 22, 101 So. 825.

Under the rule that the court will trace an act into its proximate, but not into its remote, consequences, and tracing from result to cause, it will be noted that in fact there may be two or more concurrent and directly co-operative and efficient proximate causes of an injury. Beale in 33 Harvard Law Rev. p. 740. In Jones & Hooks v. Finch, 128 Ala. 217, 29 So. 182, Mr. Chief Justice McClellan observed that the evidence showed defendant negligently caused a wire to fall and remain on a trolley wire hanging into the street, and come in contact with plaintiff's animal, and that the 'phone wire became charged with the electric current from the trolley; that the driver of the mule did not observe the suspended wire; held to recover, notwithstanding the negligence of the owner of the trolley wire in not providing fenders against the telephone wire was a conjunctive cause of the disaster. The Chief Justice said:

" * * * The negligence of the defendants was an efficient proximate cause of the result complained of, and it is of no consequence that the negligence of the owner of the trolley wire in not providing fenders against the telephone wire was a conjunctive cause of the disaster."

To the same effect is Williams, Adm'r, v. Woodward Iron Co., 106 Ala. 254, 258, 17 So. 517; Hall v. S. A. L. R. Co., 211 Ala. 602, 100 So. 890; Montgomery Co. v. Thombs, 204 Ala. 678, 682, 87 So. 205; Atlantic Co. v. Carroll, 208 Ala. 361, 94 So. 820; Home Tel. Co. v. Fields, 150 Ala. 306, 315, 43 So. 711; Western Ry. of Ala. v. Sistrunk, 85 Ala. 352, 357, 5 So. 79; McKay & Roache v. Southern Bell Tel. Co., 111 Ala. 337, 353, 19 So. 695, 31 L. R. A. 589, 56 Am. St. Rep. 59; 4 Mayfield Dig. 298, § 59; 22 R. C. L. 128, § 15; Cooley on Torts, pp. 68, 69, 70, 78; 45 C. J. 920, § 485, p. 895, § 476.

Mr. Beale in the "Proximate Consequences of an Act" observes that the rule enforced by the courts is:

Where (1) "defendant's active force has come to rest in a position of apparent safety, the court will follow it no longer (we interpolate, see Rex. v. Gill, 1 Stra. 190), if some new force later combines with this condition to create harm, the result is remote from defendant's act. (2) If the defendant's "active force has come to rest, but in a dangerous position, creating a new, or increasing an expecting, risk of loss, and the foreseen danger comes to pass, operating harmfully on the condition created by defendant and causing the risked loss," the injury thereby resulting is a proximate consequence of defendant's act.

And this distinguished author and teacher sums up the requirements of proximity of result as follows:

"(1) The defendant must have acted (or failed to act in violation of a duty). (2) The force created must (a) have remained active itself, or created another *force*, which remained active until it directly caused the result; or (b) have created a new active *risk* of being acted upon by the active force that caused the result."

Such are the tests employed in determining from the fact the proximate or remote cause. Armstrong v. Montgomery St. Ry. Co., 123 Ala. 233, 26 So. 349; Briggs v. B. R., L. &. P. Co., 188 Ala. 262, 269, 66 So. 95; Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 556, 91 So. 77; McClusky v. Duncan, 216 Ala. 388, 113 So. 250. The question is generally one for the jury. Grand Trunk R. Co. v. Ives, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485, 489. It is only when the facts are that all reasonable men must draw the same conclusion that the question of proximate cause is one of law for the courts. Vaughn v. Dwight Mfg. Co., 206 Ala. 552, 91 So. 77. We have tried to indicate that in no phase of the case was defendant entitled to affirmative instructions as requested. Ruffin Coal Co. v. Rich, 214 Ala. 622, 108 So. 600; A. G. S. R. Co. v. Cornett, 214 Ala. 23, 106 So. 242; Miles v. Hines, 205 Ala. 83, 87 So. 837.

Assignments of error 57 to 70, inclusive, challenge the rulings of the trial court. The time of the injury was that of December 17, 1925. The court permitted witness Scarbrough to be asked on cross-examination whether he recollected to have seen the reflector or any other light on the sign at other dates than the date of the injury. He had previously stated that he had seen

the light at night and at the place where Dr. Fonville was injured, and the question was competent as testing his recollection. This was not within the case of Mayor & Alderman v. Starr, 112 Ala. 98, 20 So. 424; Davis v. Alexander City, 137 Ala. 206, 33 So. 863, where the observation was made that question of knowledge and intent were proper. Moreover, there was no prejudice in the answer given, "I don't remember."

There was no error in the cross-examination of L. D. Edge. The record showed a detour sign was produced at the trial, and Villadsen testified the one produced was not that from the scene of the injury, but that the latter sign was destroyed by some collision. The witness had testified about the sign, its nature and character, and it was competent to explain by him the sign in question was run into by some one and destroyed. He answered in the negative. There was no prejudicial error in the ruling.

The questions to witness W. G. Moore referred to the reflector made and fixed to the sign, and not to the lights to be placed thereon each night. It was competent to show, without objection, in rebuttal to defendant's evidence of the reflector made, and fastened to the sign, when he passed there before and after he saw no reflector on or as a part of the sign. In these rulings there was no error; the defendant had shown the nature and character of the sign, and how it was equipped to warn the passing public, and shown by its witness Edge that, as he passed and repassed on previous occasions, he observed the sign and red light. It was competent to rebut, as was done with witnesses Moore, Galloway, and Blalock. The inquiry was confined to the previous or existing condition of the sign, as assisted by the reflector as a part thereof.

The witness Stoneseifert was asked by defendant: "In your judgment, with lights on the car, how far could that detour sign be seen?" The objection of plaintiff was sustained, and exception reserved. The witness had given his opinion of the distance of visibility of the sign down the road from his house, and was then asked the foregoing question. It was not shown that he had approached the sign in the nighttime in an automobile with "lights on the car."

The case of Republic Iron & S. Co. v. Passafume, 181 Ala. 463, 61 So. 327, discusses such question, declaring that:

One with knowledge of the facts, the subject of inquiry, "may testify that certain things * * * could have been seen, or could not have been seen, from a given point to another given point; nevertheless, in order to so testify, it must be shown that such a witness actually knows that the things could or could not have been seen. In other words, his testimony must * * * amount to a shorthand rendering of facts within the personal knowledge of the witness." A. G. S. R. Co. v. Linn, 103 Ala. 134, 15 So. 508.

The case of Southern Ry. Co. v. Bonner, 141 Ala. 517, 527, 37 So. 702, called for the opinion of an expert as to crossing and the headlight of an approaching engine. The evidence fails to show whether the witness knew the fact or matter inquired about. It was not whether the sign could be seen by the occupant of any car, but whether it could be seen by means of the headlight on the particular car in question, of which the witness had no knowledge. Moreover, the witness had stated that the sign could be seen by one driving down the road coming from his house and with the automobile lights shining upon it. There is no reversible error in the ruling.

The general objection, with no grounds assigned, to questions propounded to the witness Dye, as to how soon he applied the brakes, that he applied the brakes till the car skidded; the question of whether he could not apply the brakes any harder was not answered. The witness was then asked and answered:

"Q. Could you apply the brakes any harder than you did apply them on that occasion? A. I applied the brakes until the wheels skidded, and I did it immediately after I saw it"—over defendant's objection and exception.

The last ruling was not assigned as error.

The several refused charges assigned as error are argued in groups as presenting the same proposition, and charge 26 is presented as typical. This group was properly refused. We have indicated that the state or its highway department had nothing to do with placing the light upon the sign at night and its maintenance, as required by the necessities of time and circumstances of reasonable discharge of duty to the traveling public, for this defendant only was responsible. It had placed that duty by the contract upon the defendant; this we indicated at the outset.

This class refused are illustrated by charge 11. It ignored the phase of the evidence as to whether there was sufficient light and warning, as required, placed upon the detour, so equipped as to remain lighted. As to this we have adverted. There was no error in the refusal of same. The removal of the light by a third person might have proximately caused the injury, but defendant's negligence in failing to maintain sufficient lights might have also proximately contributed to the cause of the injury. If both contributed proximately to cause the injury, we have heretofore shown that, under the authorities, the defendant may be found guilty. And the maintenance of sufficient lights vel non was a jury question. This is aside from the fault of the charge in using the description of time as "early evening," when the assumed duty was from "sunset, until sunrise," to keep such lights on all barricades burning for such time.

Charge No. 10 was properly refused to defendant. It ignored the initial duty of placing sufficient lights upon the sign. If this was not done, the mere fact' that the sign was moved into the center of the roadway would not lessen the duty to properly warn as indicated, and authorize a verdict for defendant. The failure of defendant to properly light the sign would be the proximate and contributing cause of the injury. However, there is no evidence that the sign was moved into the center of the roadway by any third person.

Refused charge H would deny the plaintiff the right of recovery, if there was space on the paved portion of the road on which the car may have passed. This does not take into consideration the obligation of defendant to place and maintain sufficient lights on the sign, wherever placed.

Charge B, refused to defendant, is made by appellant to represent another group of his refused charges. In the case of City of Albany v. Black, 214 Ala. 359, 108 So. 49, in speaking of the liability of the city, it is declared, that, if the "signals were proper and *sufficient*, plaintiff was bound to take notice or them," whether he actually saw and understood them or not. The question under the law and evidence was whether the light and reflector as maintained constituted a sufficient warning, and was for the jury. Kearns v. M. L. & R. Co., 196 Ala. 99, 71 So. 993; City of Albany v. Black, supra; Thierry v. Oswell, 212 Ala. 418, 102 So. 903.

We have carefully considered the insistences urged, and find no error in the trial, other than the sustaining of demurrer to plea 3.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.