STATE OF SOUTH DAKOTA, Respondent, v. SWIDEN, et al,
Appellants.

(252 N. W. 628.)

(File No. 7532. Opinion filed February 1, 1934.)

L. H. Woodworth, of Webster, and Otto L. Kaas, of Britton,
for Appellants.

N. J. Jones, State's Attorney, of Britton, and M. Q. Sharpe,
Attorney General, for Respondent.

POLLEY, J. The defendants, John and Charles Swiden and
William Sells, were convicted of the crime of murder of one Au-
gust Peterson at Veblen in the early morning of December 17,
1931. With the exception of Peterson himself, there was no eye-
witness to the crime and the evidence is practically all circum-
stantial.

August Peterson, the victim, was about 68 years old. He oper-
ated a restaurant in the town of Veblen, and lived alone in a house
a few blocks from the restaurant.

The defendant John Swiden lived at Veblen, was acquainted with Peterson, and knew where he lived. The other two defendants lived at or near Waubay. John Swiden owned a Hudson automobile and had this car at Waubay on the 16th day of December. On the afternoon of the 16th all three defendants drove in this car to Veblen by way of Sisseton. It was after dark when they reached Veblen. They went to the house of one Louis Svein, about a mile east of Veblen. About 12 o'clock, the defendants drove in to the town of Veblen to get some gasoline for the car, and also some whisky, and while there drove around by Peterson's house. Defendant Charles Swiden took with him from Waubay a pistol which he carried in a holster. When they made this first trip from Svein's house into Veblen about 12 o 'clock, he left his pistol at Svein's. Between 4 and 5 o'clock in the morning of the 17th they made another trip in the car into Veblen. On this trip Charles took his pistol with him. About 5 o'clock in the morning Peterson awoke to find two men in his bedroom. One was a large man (Sells is a large man and the Swidens are smaller), who was near to the head of the bed, the other a smaller man was just inside of the bedroom door. Both men had handkerchiefs tied over the lower part of their faces. The large man who was nearest to the bed had a pistol in his hand. As Peterson awoke, the man who had the pistol said: "We are robbers, give up your money." Peterson's trousers were on a chair near the bed. In one of the pockets he had a pocketbook containing $139 in currency and a check for $76. As the larger man told him to "give up your money," he saw the smaller man reach for his (Peterson's) trousers which contained the money and the check. Just then he was struck over the head and knocked senseless, and knew nothing of what took place in the room thereafter. Some little time later Peterson was found at the city restaurant. He was in a dazed condition and did not know where he was nor how he got there. He was taken home and treated by Dr. Walter Brinkman, who was afterwards a witness in the case. Peterson was found to have two fractured ribs, a cut over the right eye, and a contused wound on his head about 2 inches above and back of his right ear. The doctor attended him three or four days when he seemed to have recovered, except that he had frequent spells of severe headache. John Swiden was arrested in Veblen on the evening of December 17th. Charles

Swiden and William Sells were arrested at Waubay on the following day. They were arrested on the charge of robbery. On the 23d day of December the sheriff took Sells to Peterson's house, put a handkerchief across the lower part of Sells' face, and led him into Peterson's bedroom. Peterson immediately jumped up and pointing his finger at Sells said: "You are the man who robbed me." To which accusation Sells made no reply.

It appears from the testimony of of the defendants that they were together all the time they were absent from the Svein place, so that if it was Sells who assaulted Peterson, the two Swidens were with him.

█ On the 19th day of February, two months after the robbery, Peterson's head hurt him and he got one Knute Sanderson to stay with him all night. Toward morning Peterson became sick and Dr. Brinkman was called. Peterson was unconscious when the doctor arrived. He was unable to talk, his left side was paralyzed, and he died on the morning of February 20, 1932. After Peterson's death an autopsy was performed by Drs. Brinkman and Rice. A blood clot was found between the skull bone and the covering of the brain at the place where the wound had been inflicted at the time of the robbery. These doctors testified that in their opinion the blood clot resulted from the blow received by Peterson on the head and that it was the blood clot that caused his death. The defendants gave conflicting and inconsistent accounts of their doings on the night of December 16th and the following day. They accounted for their trip from Svein's to Veblen between 4 and 5 o'clock on the morning of December 17th by saying that they went to see one Bob Wilson who lived near Veblen to talk with him about a prospective sale of an automobile. Wilson and his wife both testified that the defendant were not at their place at all at any time during the night or morning between the 16th and 17th of December. The evidence, if competent, is sufficient to sustain the conviction, and whether the evidence is competent is the only question in the case that merits consideration.

█ The defendants were charged with robbery and about the 27th day of December they were taken before a committing magistrate for a preliminary hearing. Sells waived examination, furnished bail and was discharged. The hearing of the Swidens

went over to the following day when the hearing was had. The decedent was present and testified to the facts relating to the assault and robbery. His testimony was taken by a stenographer and a transcript thereof was made and preserved. After decedent's death, the charge against defendants was changed to murder. At the trial, the stenographer who took decedent's testimony at the preliminary hearing was allowed, over defendant's objection, to read such testimony. Defendants claim that this was a violation of section 7 of article 6 of the Constitution which provides that a defendant on trial for a criminal offense shall be confronted by the witnesses against him "face to face"; and subdivision 3 of section 4410 of R. C. 1919, which embodies the above provision of the Constitution. Defendants objected to the reception of said evidence for the further reason that they were deprived of their opportunity to cross-examine the witness. The robbery and murder both grew out of the same identical transaction. Robbery was the motive and the blow that caused the death of Peterson was one of the steps in the commission of the robbery. The evidence of the robbery necessarily includes the evidence of the murder which was only incidental to the robbery. The Swidens were present in person and by counsel at this hearing and had an opportunity to cross-examine decedent as to every part of the entire transaction. Sells was not present at this examination and, of course, did not cross-examine decedent, but this was because he had waived examination and not because he did not have an opportunity to be present and cross-examine the witness.

In view of these circumstances was it prejudicial error to admit in evidence the testimony given by the decedent at the preliminary hearing? The question was before this court in State v. Heffernan, 22 S. D. 513, 118 N. W. 1027, 25 L. R. A. (N. S.) 868. In this case the court held that evidence taken at a preliminary hearing was not competent at the trial of the same case where the presence of the witness could not be had at the trial; but a rehearing was granted and the case was again considered by the court, 24 S. D. 1, 123 N. W. 87, 25 L. R. A. (N. S.) 868, 140 Am. St. Rep. 764. On the rehearing, the former opinion was overruled and we held the evidence was properly received. In this opinion the cases are collected and reviewed at length, and the view taken by th court is supported by the great weight of authority. In the

first opinion in the Heffernan Case, the court stressed the fact that at the time the opinion was written the law (section 7, Code Cr. Proc.) provided that the defendant had a right to be confronted with the witnesses against him "in the presence of the court." On rehearing (24 S. D. 1, 123 N. W. 87, 88, 25 L. R. A. (N. S.) 868, 140 Am. St. Rep. 764), it is said that the clause "in the presence of the court," added nothing to the legal effect of the constitutional provision, and in the 1919 revision of the Code this clause is omitted entirely. See subdivision 3 of section 4410, R. C. 1919.

In the Heffernan Case on rehearing, it is said: "The former testimony given before any tribunal which can enforce the attendance of witnesses, and administer oaths, and employs cross-examination as a part of its procedure, is admissible," citing Jones, Ev. 342; Wigmore, § 1373.

"If there was under the procedure of that official an opportunity of cross-examination, the testimony is admissible." Wigmore Ev. § 1375.

In Corpus Juris the rule is stated as follows: "Where a witness has died after he has testied, either at the preliminary examination or on a prior trial of accused, his evidence, if given in the presence of accused, may be read against accused on his subsequent trial. While there is some authority to the contrary, the weight of authority supports the rule that the statement of a deceased witness may be proved by a person who heard it on the preliminary examination or former trial and who is able to give the substance of it, and it has been held that this is the only permissible method of proof."

But it is contended by defendants that the case before the committing magistrate on the preliminary examination is not the same case that was before the circuit court on the trial—the former being upon a charge of robbery and the latter upon a charge of murder. But this is not necessarily the test. As above stated, both offenses grew out of the same identical transaction.

It is true, of course, that robbery and murder are different and distinct offenses. In the instant case, however, it was the claim of the state that the robbery was committed, not by a mere putting in fear, but by the use of force and violence. The state contended (in the robbery case) that defendants went to the house of Peter-

son and committed a violent physical assault upon him and by that means took away his money, and the state contended (in the murder case) that by reason of the same identical assault Peterson presently died. The issue between the state and the defendants, so far as concerned the assault and the infliction of force and violence on Peterson, was the same in each case, and we think evidence relating to that issue given at the preliminary examination on the robbery charge by a witness subsequently deceased, was properly admissible, under all the circumstances here appearing on the trial of the murder charge.

In the recent case of Commonwealth v. Ryhal, 274 Pa. 401, 118 A. 358, 361, the defendant was charged with rape, attempted rape, and felonious assault. The victim testified against the defendant at a preliminary hearing in which she testified as to the circumstances up to the time she became unconscious as a result of the injuries inflicted by the defendant. Her testimony was taken in shorthand and afterward transcribed. After the preliminary hearing and before the trial, the girl died. After her death, the charge against the defendant was changed to murder, and, on the trial, the testimony of the girl taken at the preliminary hearing was admitted in evidence. Defendant contended that this evidence was not competent

—"because the charges the defendant was called on to meet at the preliminary hearing, at which the testimony was taken, are not the same as those upon which he was tried, it will be observed that, while the charges were not the same, they grew out of the same facts and circumstances—the assault upon the girl by him— the only circumstance not existing on the preliminary hearing, when the testimony was given and which had supervened at the trial, was the culminating one, her death. The record discloses that the information on which the first hearing was founded was sworn out by the same person who made the affidavit to the murder complaint; he testified that both prosecutions grew out of the same facts and circumstances. The witness Clara Belle Lennox, having died between the time she testified and the trial of the defendant, the parties being the same in each instance, the commonwealth and the defendant, and the issues being the same, whether she had been assaulted and whether he was guilty of the assault, her testimony was competent evidence against him. Com. v. Keck,

148 Pa. 639, 24 A. 161; Com. v. Cleary, 148 Pa. 26, 23 A 1110; McLain v. Com., 99 Pa. 86; Brown v. Com., 73 Pa. 321, 13 Am. Rep. 740; 16 Corpus Juris, § 2117, p. 839. Where the accused was under arrest upon the charge of assault, with intent to kill, at the time of the preliminary examination, the fact that it was afterwards changed to an indictment for murder, upon the death of the victim, does not prevent admission of the testimony taken at the preliminary hearing. State v. Wilson, 24 Kan. 189, 36 Am. Rep. 257.

"Where the different crimes, or different degrees of the same crime were based on the same act the following accusations have been held sufficiently similar to make testimony at the preliminary examination of the one admissible at the trial of the other, provided the other requisites for admission are established: Assault with intent to kill and murder. Dunlap v. State, 9 Tex. App. 179, 35 Am. Rep. 736; Hart v. State, 15 Tex. App. 202, 49 Am. Rep. 188. Assault and robbery and murder. Rex v. Smith, 2 Starkie (Eng.) 208. Assault and battery and murder. State v. O'Brien, 81 Iowa 88, 46 N. W. 752. Assault with intent to do grievous bodily harm and murder. Reg. v. Beeston, 6 Cox C. C. (Eng.) 425; and see 15 Amer. Law Rep. 526."

The cases cited in the opinion fully support the conclusion of the court, and the same rule is followed in England: See Reg. v. Beeston, supra, found in 169 English Reports (Full Reprint) at page 782; Dears. 405. While the rule is not unanimous (see Dukes v. State, 80 Miss. 353, 31 So. 744), it is supported by the overwhelming weight of authority. See the recent case of State v. Brown (Mo. Sup.) 56 S. W. (2d) 405, and for a full discussion of the subject see Smith v. State, 147 Ga. 689, 95 S. E. 281, and note 15 A. L. R. 526. We believe it has the support of the weight of authority and we adopt the same as the rule in this court.

We have carefully examined the other assignments contained in the record but find nothing that we feel merits special consideration. We believe the defendants had a fair trial and the verdict of guilt is warranted by the evidence.

The judgment and order appealed from are affirmed.

All Judges concur.