DeMOSS, Circuit Judge,
dissenting:
In response to special verdict questions, the jury answered that Sumrall (the driver of the 18-wheel tractor-trailer) was “negligent in connection with the occurrence of this accident” and that Hiltgen (the driver of the van) was “negligent in connection with the occurrence of this accident” In response to similar special verdict questions, the jury found that Sumrall’s negligence was “a proximate contributing cause of the collision in question” but that Hiltgen’s negligence was not “a proximate contributing cause of the collision in question.” Therein lies the core controversy in this case, i.e., in a two-vehicle collision, where the jury has found both the drivers negligent “in connection with the occurrence of such collision,” what evidence is required to form the basis of a “legally sufficient evidentiary basis for a reasonable jury” to find that one party’s negligence is a proximate cause and the other party’s negligence is not a proximate cause of such collision?
The answer to that question must start with the definition of what constitutes a “proximate cause” under the law of Alabama, where this accident occurred.[1] In the case of General Motors Corporation v. Edwards, 482 So.2d 1176 (Ala.1985), the Supreme Court of Alabama discussed at length the elements of “proximate cause” under Alabama law, and the following excerpts from that discussion indicate the portions relevant to our present controversy:
In Alabama, as elsewhere, foreseeability is the cornerstone of proximate cause, Alabama Paper Company v. Taylor, 293 Ala. 484, 306 So.2d 236 (1975). As a result, one is held legally responsible for all consequences which a prudent and experienced person, fully acquainted with all the cir *706 cumstances, at the time of his negligent act, would have thought reasonably possible to follow the act, Prescott v. Martin, 331 So.2d 240 (Ala.1976), including the negligence of others, Williams v. Woodman, 424 So.2d 611 (Ala.1982). In short, as this court has frequently stated, and as the trial court in this case correctly instructed the jury, a particular cause is considered the proximate cause of an injury if, in the natural and probable sequence of events, and without intervention of any new or independent cause, the injury flows from the act....
Loosely defined, an “intervening cause” is one which occurs after an act committed by a tortfeasor and which relieves him of his liability by breaking the chain of causation between his act and the resulting injury. Vines v. Plantation Motor Lodge, 336 So.2d 1338 (Ala.1976)....
An intervening cause may be an “act of God,” such as an extraordinary event of nature, Bradford v. Stanley, 365 So.2d 328 (Ala.1978), or the actions of another, usually, though not necessarily, another tortfea-sor; however, a cause is not an intervening cause so as to reheve a tortfeasor of his liability, unless it comes into active operation after the tortfeasor has acted....
Not every cause which comes into operation after a tortfeasor has acted will relieve him of liability for his wrongful act. More than the proper temporal relationship between the tortfeasor’s act and the subsequent cause is required. In order to be an intervening cause, a subsequent cause must also have been unforeseeable and must have been sufficient in and of itself to have been the sole “cause in fact” of the injury. Vines, supra at 1339. If an intervening cause could have reasonably been foreseen at the time the tortfeasor acted, it does not break the chain of causation between his act and the injury. Vines, supra; Morgan, supra; Louisville and N.R. Co. v. Courson, 234 Ala. 273, 174 So. 474 (1937). Conversely, if the intervening cause was unforeseeable, the causal chain is broken. Vines, supra.
Where two or more tortfeasors may be responsible for the same injury, the law of proximate cause is overlapped by the law of concurrent tortfeasor liability. The basic premise of concurrent tortfeasor law is that, as alluded to above, an injury may have several concurrent proximate causes, Morgan Hill Paving Co. v. Fonville, 218 Ala. 566, 119 So. 610 (1928), including the actions of two or more tortfeasors, neither of whose action was sufficient in and of itself to produce the injury, who act, either together or independently, to produce it. Butler v. Olshan, 280 Ala. 181, 191 So.2d 7 (1966). Alabama law is clear that on such occasions, where the actions of two or more tortfeasors combine, concur or coalesce to produce an injury, each tortfea-sor’s act is considered to be the proximate cause of the injury, Williams v. Woodman, 424 So.2d 611 (Ala.1982)....
... In other words, because the actions of each tortfeasor contributed, as a “cause of in fact,” to produce the injury, no tort-feasor may assert that the actions of another tortfeasor, and not his own, caused the injury. The single exception to this rule is, as discussed above, where the unforeseen act of another tortfeasor, which was sufficient in and of itself to produce the injury, intervened between the time the first tortfeasor acted and the injury....
Edwards, 482 So.2d at 1194-95.
Applying these precepts to this case leads to the following conclusions as a matter of law:
(1) There is no evidence of any kind whatsoever in this case as to an “act of God” or “an extraordinary event of nature” which could have constituted an intervening cause.
(2) There is no testimony of any kind whatsoever in this case regarding the actions of any third person or entity as having any connection with this collision, and we are left therefore with the conclusion that there are two, and only two, possible tortfeasors involved.
(3) There is no evidence of any kind whatsoever in this case of any time or distance gap separating the negligence of *707 Sumrall from the negligence of Hilt-gen, and according to the uncontradict-ed evidence, the negligence of Sumrall and the negligence of Hiltgen were in fact occurring right up to the moment of impact.
(4) Neither Sumrall nor Hiltgen can successfully contend that the negligence of the other was not foreseeable. The reason the law requires a commercial tractor-trailer to have operable taillights and not just reflectors on the rear of its vehicle is that the taillights increase the distance at which the trailer can be seen at night, so that other drivers overtaking the trailer will be aware of its presence sooner than they would relying on their own headlights to activate the reflectors, particularly if such headlights are defective or on low beam. Conversely, the reason the law mandates that a vehicle have two operable headlights with the capacity to switch from low to high beam is to maximize the distance at which other traffic may be identified, even in the circumstance when other traffic may not be properly lighted. In either case, the circumstance of the occurrence of inoperable taillights or inoperable or defective headlights is a circumstance which is readily foreseeable. In a later case, the Supreme Court of Alabama, in discussing the “foreseeability” aspect of “proximate cause” stated: “Foreseeability does not require that the particular consequence should have been anticipated, but rather that some general harm or consequence could have been anticipated.” Thetford v. City of Clanton, 605 So.2d 835, at 840 (Ala.1992).
(5) Consequently, there is no new or independent or intervening cause; the individual negligent actions of Sumrall and Hiltgen did “combine, concur or coalesce” to produce the injuries involved. Accordingly, each of those tortfeasor’s acts “is considered to be the proximate cause of the injury.” Therefore, the jury finding as to no proximate cause on the negligence of Hiltgen is not supported by substantial evidence in the testimony and record and should have been disregarded when tested by the defendant’s motion for judgment as a matter of law after the jury verdict.[2]
In the section of their opinion headed “Sufficiency of the Evidence,” the majority undertakes an elaborate explanation to arrive at a conclusion to support the jury’s finding of no proximate cause as to the negligence of Hiltgen. I cannot agree with either the methodology or the result of this analysis. Our task in reviewing the jury’s verdict is of course complicated by the fact that the questions submitted to the jury on the special verdict as to negligence were generic rather than specific.[3] As the majority recognizes in its opinion, the defendants contended that Hiltgen was negligent in three respects: (1) operating his vehicle with only one working headlight at night; (2) driving too fast under the circumstances; and (3) being inattentive to the road ahead of him. The jury found that “Hiltgen was negligent in connection with the occurrence of this accident.” This finding leaves us with the question of what, if anything can we deduce from a general finding of “negligence on the occurrence of this accident”, as to what the jury determined as to any of the specific grounds of negligence asserted by the defendants against Hiltgen. As a matter of logic and legal requirements, it would seem to me that the test should be that the jury found negligence as to each of the grounds as to which the evidence would be sufficient to support the jury’s finding if *708 the jury had been asked specifically and separately as to each ground. Viewed from this perspective, there is no doubt that the evidence presented to the jury was sufficient to support a finding of negligence on the part of Hiltgen as to each of the three alleged grounds: (1) The issue of operating his vehicle with only one working headlight was stipulated by the parties, and the trial judge instructed the jury that such action constituted negligence per se under Alabama law; (2) As to the issue of driving too fast under the circumstances, there was clear evidence that shortly before the collision, Hiltgen passed another vehicle that was travelling at 65 mph, and that Hiltgen pulled away from this other vehicle 50 to 75 yards before the collision, and there was clear evidence that the one headlight working on Hiltgen’s van was on the low beam setting; and (3) On the issue of failure to keep a proper lookout, there was clear and sufficient evidence that the brake lights on the Hiltgen van never came on, that the Hiltgen van made no skid marks, that the accelerator of the Hiltgen van was deformed by the impact of the collision indicating that Hiltgen’s foot was resting on the accelerator at the moment of impact, and that the Hiltgen van never swerved in either direction, but struck the rear end of the tractor-trailer head-on. The majority expressly recognizes the sufficiency of the evidence to support a jury finding on each of these grounds.
Logically, then, the next test is to determine the legal sufficiency of the jury’s finding that none of the negligence of Hiltgen was “a proximate contributing cause of the collision in question.” For the reasons described at the beginning of this dissent, I submit there is no evidence whatsoever upon which a jury could have relied to find either a time gap or a distance gap between the negligences of the two tortfeasors, which the jury had to have found to return a finding that Hiltgen’s negligence was not a proximate cause of the accident. Furthermore, the injury resulting from this collision “flowed, in the natural and probable sequence of events, and without intervention of any new or independent cause,” from the two acts of negligence which the jury found. Where, as the undisputed facts in this case demonstrate, the “actions of two or more tortfeasors combine, concur or coalesce to produce an injury, each tortfeasor’s act is considered to be the proximate cause of the injury.” Edwards, 482 So.2d at 1195. Amazingly, the majority opinion does not contain even a simple definition of “proximate cause” under Alabama law, and there is no attempt on the part of the majority to assess the evidentiary factors that are clearly required in a determination of proximate cause. The majority expressly recognizes that there is a “serious conflict” between the jury’s findings that Hiltgen was negligently driving at an unreasonable speed or was failing to keep a proper lookout with the jury’s findings that Hiltgen’s negligence was not a proximate cause of the accident. Their solution to that conflict, however, is to reassess “the evidence of Hiltgen’s speed and inattentiveness accordingly, i.e., in favor of the plaintiff" (emphasis added). No statutory provision or case precedent is cited by the majority to support their methodology of reassessing evidence “in favor of the plaintiff’, and that strikes me as a new rule fraught with peril and full of potential abuse. We are bound to view the evidence in the light most favorable to the jury’s verdict. The jury found against Hiltgen on the negligence issue. We should, therefore, view the evidence in a light most favorable to the negligence finding and not in a light most favorable to Hiltgen, as the majority suggests. The majority then proceeds to dispose of the unreasonable speed issue with the following statement: “We cannot conclude that this constituted negligence as a matter of law; nor can we assume that the jury found it to be negligent.” I would not argue that the speed was unreasonable “as a matter of law,” but I would strongly argue that the evidence on unreasonable speed was clearly sufficient to support a jury finding that it was unreasonable, and that when the jury finds that the driver was “negligent” and the evidence would support a finding of unreasonable speed, we should assume that the jury would have made that finding if they had been specifically asked. Similarly, as to the issue of “negligent inattentiveness,” the majority goes through a similar re-weighing and re-assessment of the evidence in order to *709 produce a result most favorable to the plaintiff, and it concludes its analysis with the statement: “The jury certainly could have concluded that Hiltgen was not negligently inattentive, and thus that inattentiveness was not a proximate cause of the accident.” Later on, the majority further states on this issue that: “Clearly the jury was not obligated to find that the decedent was negligent on this basis, and we cannot assume that it did so.” As with the issue of unreasonable speed, however, when a jury finds generally that a driver is “negligent,” we can logically, and should legally, assume that the jury would find that such negligence existed in any respect as to which the evidence is sufficient to support that aspect. On this inattentiveness issue, I would also point out that the majority attempts to kill two birds with one stone, i.e., not only could the jury conclude “that Hiltgen was not negligently inattentive” but also that the “inattentiveness,” which was not negligent, was therefore “not a proximate cause of the accident.” The logic of this determination escapes me.
In conclusion, there is nothing more “foreseeable” than the fact that if you drive with only one, low beam headlight at night (which is negligence per se under Alabama law), at an excessive speed, and you are inattentive to the road in front of you, you may run into the rear of a slower-moving vehicle whose taillights are not operating properly. Every safe driving course taught in every high school, and every defensive driving course given to adults, instructs over and over again that the greatest danger in driving at night is “over-driving your lights,” i.e., driving at a speed which prevents you from stopping or turning to avoid a hazard in the visible distance ahead. Both of these curative actions are achievable if you have response time. Response time is a function of speed and visibility, visibility is a function of available light, and at night, hazards may not always have lights on them. Furthermore, on a divided interstate freeway with two lanes for vehicles proceeding in the same direction, the ability to change lanes quickly is a safety factor which permits faster moving traffic to avoid and pass slower moving traffic. Consequently, if one chooses to drive on our interstate freeways at or over the speed limit, the safer place to be is in the left-hand lane, because slower-moving, entering traffic must enter the right lane from the right, and departing traffic must slow down in the right lane to exit on the right. Highway signs generally instruct slow-moving traffic to use the right lane. The collision in this case occurred in the right-hand lane and at a point approaching a freeway exit.
The only evidence upon which the jury could have rationally based its decision that Hiltgen’s contributory negligence was not a proximate cause of the accident was the testimony of plaintiffs expert “accident recon-structionist,” Mr. Langley. Mr. Langley’s testimony did not address at all the factors required to determine “proximate cause” under Edwards, supra. Furthermore, the trial judge correctly characterized Langley’s testimony as “unsupported and incompetent” and sufficiently prejudicial to entitle defendants to a new trial. Regrettably, the trial judge backed down on his initial determination to grant a new trial; therein, I think the trial judge erred. But whether the trial judge erred in this regard is not the issue on appeal in this case. The critical issue on appeal in this case is whether the jury’s finding that Hiltgen’s negligence was not a proximate cause of the collision in question was supported by legally sufficient evidence within the meaning of Rule 50(a) and (b).
For the reasons set forth herein, I would conclude that such finding is not supported by sufficient evidence and would reverse and remand this case for new trial as initially decided by the trial judge.

. I concur with the majority’s decision — under Mississippi choice-of-law principles — to apply the substantive law of Alabama, the state where the accident and its legal consequences occurred.

. Given that there was no testimony upon which either plaintiff or defendants could expect to support a jury verdict of no proximate cause as to their respective negligences, if any, the submission of the separate causation special issues served only to create the very possibility of confusion and conflict in the jury’s answers which did in fact occur. Any negligence which the jury found on the part of either party would, as a matter of law, be a proximate cause of the resulting injuries.

. The text of the questions submitted to the jury was:
1. Was Doug Sumrall negligent in connection with the occurrence of this accident?
2. Was Peter Hiltgen negligent in connection with the occurrence of this accident?